Argued and submitted May 28, vacated and remanded for reconsideration of merger; otherwise affirmed October 15, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WARREN CLIFFORD STANTON, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
101034072; A149660

337 P3d 955

Mary M. Reese, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Defendant appeals a judgment of conviction for five counts of unlawful use of a weapon with a firearm, ORS 166.220;[1] ORS 161.610(2). He assigns error to the trial court's denial of his request to merge the guilty verdicts for the five counts, pursuant to the "anti-merger" statute, ORS 161.067(1). Defendant makes two arguments that his guilty verdicts should have merged. First, he argues that, when he fired five shots toward a group of people, there was a single class of persons constituting "one victim." Second, defendant argues that there was no sufficient pause in his conduct. We review for legal error and are bound by the trial court's factual findings, provided there is sufficient evidence in the record to support them. *State v. Cale*, 263 Or App 635, 637, 330 P3d 43 (2014). As it happens here, the state concedes that the trial court did not make factual findings as to merger. The state urges that we remand so that the trial court may address the issue in the first instance. We agree with the state, vacate the judgment, and remand for reconsideration of merger. Otherwise, we affirm.[2]

For purposes of our review, the following circumstances appear to be uncontroverted.[3] Defendant drove to downtown Portland to pick up two women, Martin and Sison. He met them in a parking lot directly across the street from Qube, a club at the southwest corner of First Avenue and Pine Street. Meanwhile, a group of unknown people left Qube, at the insistence of the club's bouncers. Three of the men in the group crossed the street and loitered

---

[1] ORS 166.220 provides, in part:

"(1) A person commits the crime of unlawful use of a weapon if the person:

"(a) Attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any dangerous or deadly weapon as defined in ORS 161.015; or

"(b) Intentionally discharges a firearm *** within the city limits of any city *** at or in the direction of any person, building, structure or vehicle within the range of the weapon without having legal authority for such discharge."

[2] Defendant was also convicted of two counts of felon in possession of a firearm, ORS 166.270(1).

[3] Our description of this record on appeal does not bind the trial court when, on remand, it makes its finding of fact from which it will draw its legal conclusions.

near defendant in the middle of a parking lot. A bouncer standing outside Qube suspected that there might be a fight. An aggressive exchange ensued, during which defendant drew a pistol from his waistband. Martin grabbed defendant and pulled him into the back seat of the car, but, before she could begin driving away, one of the men from the group shattered the back window. Seven to 10 members of the group stood together at the northwest street corner as defendant's car began to leave.[4] The car stopped at an angle in the intersection. Defendant leaned out of the window and fired three shots toward the group standing near the corner. Immediately thereafter, defendant fired another two shots as the car sped away. Defendant was charged with several crimes including five counts of unlawful use of a weapon with a firearm.

At defendant's bench trial, a Qube bouncer testified as to the timing and number of shots that defendant fired. He explained that there were "three shots consecutively and then the vehicle started to pull away and there [were] two more shots fired as the vehicle was pulling away. * * * Bang, bang, bang ... bang, bang." A 9-1-1 recording that included the sounds of the gunshots was consistent with the bouncer's recollection. The trial court made a credibility finding in favor of the bouncer's testimony, found that defendant fired five shots, and convicted defendant of multiple counts, including five counts of unlawful use of a weapon with a firearm.

In preparation for sentencing, defendant submitted a memorandum contending, among other things, that the guilty verdicts for unlawful use of a weapon should merge. The anti-merger statute, ORS 161.067, provides, in relevant part:

"(2) When the same conduct or criminal episode, though violating only one statutory provision, involves two or more victims, there are as many separately punishable offenses as there are victims.

"* * * * *

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same

---

[4] Eyewitness testimony as to the total number of individuals in the group varied and no witness was able to offer a precise number. Members of the group were not identified by the time of defendant's trial.

statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

Defendant argued that "[t]he gunshots were part of the same conduct or criminal episode" without a sufficient pause in the criminal conduct to allow defendant an opportunity to renounce criminal intent. Defendant suggested that the state's theory of the case did not rely on the presence of multiple victims. At sentencing, the parties requested a finding regarding "whether [the] verdict in the five UUW counts was based on five separate victims or on the five shots." Contrary to defendant, the state argued that

"there were five people standing there, and he fired five shots. *** [U]nder the law, under the definition of victim, if there were five people standing there, *** [they are] all legally considered separate victims. And I think clearly they are. They would all have—you know, if they had testified or made themselves available or whatever, they'd all have a right, if they'd been standing on that corner to speak at sentencing, to be entitled to restitution, if there were any. So I think based on the legal definition of a victim, there are five separate victims in this case, even though they weren't identified at the time."

Defense counsel rejoined that the evidence was unclear as to how many individuals were on the corner and that the shots occurred in "rapid succession" with "indiscernible pause, if any."

On a different issue, the state raised the potential for consecutive sentencing for the various offenses, as permitted by ORS 137.123(5)(b).[5] That statute provides, in part:

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"* * * * *

---

[5] The state requested that the court impose a consecutive sentence for a count of felon in possession of a firearm, for a total of 72 months of imprisonment.

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

In response, the court considered the number of victims for the purpose of consecutive sentencing, noting that defense counsel "cites in his memo *** ORS 161.067, as well, which is *** similar or related [to ORS 137.123(5)(b)]." The trial court determined that "each shot created additional risk, and that can be the basis for consecutive sentences. So I'm not saying that there were five different victims. I'm saying there was a risk, and that's enough under the statute."

The trial court, however, did not make findings as to the number of victims, and it did not merge any of defendant's guilty verdicts. The trial court also did not rule on defendant's argument that "there's no indication that there was a sufficient pause in [defendant's] criminal conduct to allow him the opportunity to renounce his criminal intentions." Instead, the trial court assumed that the merger question posed by the parties was obviated by its ruling regarding "increased harm" for the purpose of consecutive sentencing.[6] The trial court entered sentences for each of the five counts of unlawful use of a weapon with a firearm.[7]

On appeal, defendant argues that the trial court erred in declining to merge his guilty verdicts on the five counts of unlawful use of a weapon with a firearm. Defendant contends that the gunshots happened within seconds of one another without a sufficient pause and that there was only "one victim" because the group of bystanders constituted a single class. The state interjects that this court should remand the matter to the trial court to make a ruling as to merger. The state concedes that the trial court "never

_____

[6] The trial court explained, "The question that you all asked me to answer, I didn't really answer because I didn't think I needed to. I thought this [ruling] covered it."

[7] Defendant's sentences included five years of prison for one count of unlawful use of a weapon with a firearm and concurrent presumptive prison sentences for the remaining four counts of unlawful use of a weapon with a firearm.

addressed the question of merger or made any factual findings related to that issue." We consider the state's point as well-taken. *Cf. State v. Lunacolorado*, 238 Or App 691, 696, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011) ("The reasoning in [*Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968)] allows us to infer a finding of fact, but only where we can deduce that the trial court's chain of reasoning must necessarily have included that fact as one of its links.").

If a defendant is found guilty of committing multiple crimes in the course of a single criminal episode, the guilty verdicts merge unless they are subject to one of the exceptions pursuant to the anti-merger statute. To convict on separate guilty verdicts pursuant to the anti-merger statute, a trial court therefore is required to determine the number of victims, and, if there was only one victim, whether there was a sufficient pause in defendant's criminal conduct. *See, e.g., State v. Glaspey*, 337 Or 558, 563, 100 P3d 730 (2004) (concluding that "ORS 161.067(2) uses the term 'victims' to describe the category of persons who are victims within the meaning of the specific substantive statute defining the relevant offense"); *see also State v. Huffman*, 234 Or App 177, 185-86, 227 P3d 1206 (2010) (discussing ORS 161.067(3) and concluding that "the simultaneous occurrence of offenses does not give rise to a 'sufficient pause'" and that "for repeated violations to be separately punishable, one crime must end before another begins" (internal quotation marks omitted)).

In this case, the record reveals that the trial court did not believe that it was required to reach the question of merger or make a determination as to the number of victims implicated in defendant's unlawful use of a weapon due to its conclusion that defendant's conduct had caused "additional risk [of harm]" to multiple victims for purposes of ORS 137.123(5)(b). A consideration of consecutive sentencing pursuant to ORS 137.123, however, did not avoid the need to have made such determinations first. *See, e.g., State v. Bowers*, 234 Or App 301, 305, 227 P3d 822, *rev den*, 348 Or 621 (2010) (trial court incorrectly concluded that "the requirements of ORS 161.067(3) were not met but that it was only the 'sentences' that merged, not the 'convictions'" and entered separate convictions with concurrent sentences).

The trial court was required to determine whether defendant's guilty verdicts should merge or whether an exception to merger applied. Accordingly, we remand to the trial court to make additional findings required for the purposes of ORS 161.067.

Vacated and remanded for reconsideration of merger; otherwise affirmed.