Argued and submitted October 20, 2011, reversed and remanded with instructions to merge guilty verdicts into one conviction for second-degree assault and for resentencing; otherwise affirmed October 24, 2012

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RALPH EMMITTE GLAZIER,
*Defendant-Appellant.*

Benton County Circuit Court
DV0920661; A144711

288 P3d 1007

Joe Metcalfe argued the cause for appellant. With him on the brief were Sarah Peterson and Metcalfe & Peterson LLC.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Judge, and Nakamoto, Judge.*

---

* Brewer, J., *vice* Wollheim, J.

BREWER, J.

**BREWER, J.**

Defendant was convicted of one count of assault in the second degree and two counts of assault in the fourth degree, arising out of an altercation between defendant and the victim, his wife. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal and motion for a new trial, contending that the evidence was insufficient to establish "physical injury," as required for a conviction of fourth-degree assault, and that the state had failed to establish that defendant inflicted injury by means of a "dangerous weapon," as required for a conviction of second-degree assault. Defendant also contends that the guilty verdicts should merge into a single assault conviction. We conclude that the trial court erred in declining to merge the guilty verdicts and otherwise affirm.

In reviewing the denial of defendant's motion for a judgment of acquittal, we determine whether the record contains evidence from which a rational trier of fact, drawing all reasonable inferences in the light most favorable to the state, could find that all of the elements of the charged offenses were proved beyond a reasonable doubt. *State v. Simons*, 214 Or App 675, 167 P3d 476 (2007), *rev den*, 344 Or 43 (2008). On the morning of May 29, 2009, defendant pulled the victim off her bed by the ankle, causing her to hit her head and left hip as she landed on the hardwood floor. Defendant then dragged her into the hallway, hitting her left hip on the doorjamb and her right hip on the wall. He then dragged her by her arm into an area between the dining and living rooms and struck her head against the hardwood floor four or five times. Defendant then kicked the victim in the torso.

One of the officers who investigated the incident noted that, at the scene, the victim described pain on the right side of her head, although the officer did not observe immediate bruising on the victim's head. The victim testified, however, that as a result of having her head hit against the floor, she had "quite a knot" on the right side of her scalp and that her head was very sore. The investigating officer noted red marks and bruising on the victim's sides. The victim also testified that her neck and shoulders were sore after the incident and that she could not turn her head for several

weeks. The victim's injuries did not prevent her from packing her car on the night of the incident or from moving out of the house the next day. The victim did not immediately seek medical attention for her injuries; she did, however, eventually go to the doctor for examination and treatment.

Defendant was charged with multiple offenses. A jury ultimately convicted him of second-degree assault by means of a dangerous weapon (Count 1) based on the head injuries that the victim sustained, and two counts of fourth-degree assault, based on the injuries to the victim's ribs (Count 5) and legs (Count 6). At sentencing, the trial court determined that, although defendant's conduct had caused distinct injuries to separate parts of the victim's body, the acts that caused those injuries were part of the same criminal episode and the same incident. For that reason, the court imposed concurrent sentences on the three assault convictions; however, the court declined to merge the guilty verdicts on those charges into a single conviction. Defendant appeals from the ensuing judgment of conviction.

In his first assignment of error, defendant contends that the trial court erred in denying his motion for a judgment of acquittal on the fourth-degree assault convictions on the ground that the evidence was insufficient to establish that his conduct caused physical injury to the victim.[1] A person commits the crime of assault in the fourth degree when the person "intentionally, knowingly or recklessly causes physical injury to another." ORS 163.160(1)(a). "Physical injury" is defined as "impairment of physical condition or substantial pain." ORS 161.015(7). The state does not rely on a "substantial pain" theory in this case. Thus, we focus on whether there was evidence that the victim suffered "impairment of physical condition."

Impairment of physical condition means "harm to the body that results in a reduction in one's ability to use the body or a bodily organ for less than a protracted period of time." *State v. Higgins*, 165 Or App 442, 446-47, 998 P2d 222 (2000). Defendant notes that we have held that a heavy scrape or gash that breaks the skin qualifies as

---

[1] We reject without discussion the state's assertion that defendant failed to preserve that challenge.

impairment of physical condition. *See, e.g.*, *State v. Jones*, 229 Or App 734, 738-39, 212 P3d 1292, *rev den*, 347 Or 446 (2009) (heavy scrape was significant and was capable of disrupting the ordinary function of the skin); *State v. Hart*, 222 Or App 285, 291, 193 P3d 42 (2008) (one-half inch gash on back of victim's head was legally sufficient evidence of "impairment of physical condition"). By contrast, defendant asserts that a bruise, however painful, does not impair a physical condition if it has no impact on the victim's use of his or her body. He relies on our decision in *Higgins*, 165 Or App at 444, where we held that scrapes on the victim's neck and arm that were neither painful nor bleeding were insufficient to establish impairment of physical condition because the victim suffered no diminished ability to use his neck and arm for any period of time. Defendant asserts that there was no evidence that the bruising to the victim's ribs and legs impaired her use of those body parts or any other body part and, accordingly, the trial court erred in denying his motion for a judgment of acquittal on the fourth-degree assault charges. We disagree.

In *Higgins*, we reaffirmed our conclusion in *State v. Cetto*, 66 Or App 337, 674 P2d 66, *rev den*, 296 Or 712 (1984), that, for example, a "swollen lip impairs the ordinary function of a body part, the mouth." 165 Or App at 448. Thus, we held, our statement that "impairment of physical condition means harm to the body that results in a reduction in one's ability to use the body or a bodily organ," *id.* at 446-47, should be understood to include not only impairment of voluntary use of a body part, but also of the ordinary function of a body part. Here, the victim testified that the pain arising from her injuries made it more difficult for her to engage in normal activities such as walking up and down stairs and lifting small objects. That evidence was sufficient to support the inference that the posited injuries caused impairment for purposes of establishing physical injury on the fourth-degree assault charges.

In his third assignment of error, defendant contends that the trial court erred in denying his motion for a judgment of acquittal on the second-degree assault charge, which was based on defendant's acts of striking the victim's head against the hardwood floor several times. A person commits

the offense of assault in the second degree if the person "[i]ntentionally or knowingly causes physical injury to another by means of a deadly or dangerous weapon[.]" ORS 163.175. "Dangerous weapon" is defined in ORS 161.015(1) as

"any weapon, device, instrument, material or substance which under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury."

Defendant acknowledges that a hardwood floor *can* be a dangerous weapon, and we agree. A dangerous weapon includes any "material or substance" that is "readily capable of causing death or serious injury" in the circumstances of its use. In *State v. Reed,* 101 Or App 277, 279-80, 790 P2d 551, *rev den,* 310 Or 195 (1990), for example, we held that a sidewalk was a dangerous weapon where the defendant had repeatedly struck the victim's head against it. Defendant contends, however, that the evidence here was insufficient to prove that he *used* the floor as a dangerous weapon because there was no evidence that he hit the victim's head hard enough against the floor to cause her a serious physical injury. We reject that argument. The test for determining whether an instrumentality was used as a dangerous weapon is not what injury resulted, but what injury could have resulted under the circumstances. *State v. Wier,* 22 Or App 549, 551, 540 P2d 394 (1975). Here, viewed in the light most favorable to the state, the evidence was sufficient to permit a trier of fact to determine that the floor was readily capable of causing serious physical injury to the victim in the circumstance where defendant repeatedly struck her head against it.

Defendant next contends that the evidence was insufficient to establish that he caused any physical injury at all by hitting the victim's head on the floor. Once again, we disagree. There was evidence from which the jury could find that, as a result of the charged conduct, the victim was unable to turn her neck for several weeks. Although defendant asserts that the victim's neck injury could have been caused when she fell to the floor after defendant pulled her off the bed, that is only one inference that could be drawn

from the evidence. The jury also reasonably could have found that that physical injury resulted from the charged conduct.[2]

In his fifth assignment of error, defendant assents that the trial court erred in failing to merge the guilty verdicts on the three assault charges into a single conviction of assault in the second degree. As noted, the trial court found that, although defendant's conduct caused distinct injuries to separate parts of the victim's body, the acts causing the injuries were part of the same criminal episode and the same incident. Although the court imposed concurrent sentences for that reason, the court declined to merge the guilty verdicts into a single conviction.

Whether multiple guilty verdicts merge into a single conviction is a question of law that we review for legal error. *State v. Barnum*, 333 Or 297, 302, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006). We are bound by the trial court's findings of fact, so long as they are supported by the evidence. Where such evidence exists, our role is to decide whether the trial court correctly applied the applicable legal principles to the facts that it found. *State v. Huffman*, 234 Or App 177, 183, 227 P3d 1206 (2010).

ORS 161.067 governs the merger of guilty verdicts. It provides, in relevant part:

"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are statutory violations.

"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. * * *

---

[2] For the same reasons, we also reject defendant's fourth assignment of error, in which he contends that the trial court should have granted his motion for a new trial because the evidence of all three charged assaults was insufficient as a matter of law.

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this section, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

In *White*, 341 Or at 637-38, the Supreme Court held that there are three circumstances in which "separately punishable offenses" may arise out of the same conduct or criminal episode: (1) when the conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, ORS 161.067(1); (2) when the conduct or criminal episode violates only one statutory provision but involves two or more victims, ORS 161.067(2); and (3) when the conduct or criminal episode involves repeated violations of the same statutory provision against the same victim, but only if each violation is "separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce criminal intent." ORS 161.067(3).

As charged in this case, the fourth-degree assault offenses of which defendant was convicted are lesser-included offenses of the second-degree assault charge. Therefore, ORS 161.067(1) does not prevent merger of the guilty verdicts. *State v. Sanders*, 185 Or App 125, 130, 57 P3d 963 (2002), *modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004). Furthermore, because there was only one victim, ORS 161.067(2) does not prevent merger in this case. The question thus reduces to whether the offenses were separately punishable under ORS 161.067(3). To so qualify, an offense must be separated from other violations by a "sufficient pause" in the defendant's criminal conduct to afford an opportunity to renounce the criminal intent. *White*, 341 Or at 637. A sufficient pause means "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity

to renounce his or her criminal intent." *Huffman*, 234 Or App at 184.

Defendant contends that, here, there was no evidence of a pause between the three charged offenses that was sufficient to permit their treatment as separate crimes. Defendant asserts that the assaults, which the trial court found were part of the same criminal episode and the same incident, were continuous and did not afford defendant an opportunity to renounce his criminal intent. The state counters that the evidence showed that the assaults occurred in "stages" that were separated by "pauses": The victim's leg and hip injuries were inflicted in the "first stage," when defendant pulled her off the bed and dragged her into the living room; her head injuries occurred in the second stage, when defendant hit her head against the floor; and her rib injuries occurred at the end, when defendant kicked her in the side. At the very least, the state asserts, there was evidence from which the trier of fact could have found that defendant paused between each assault.

Several of our previous decisions inform our resolution of the parties' arguments. In *Sanders*, the defendant beat the victim with a wooden closet rod. He struck her on the torso, the thigh, and the wrist, which was fractured in the process. The wrist fracture occurred as the victim attempted to ward off a blow aimed at her head. 185 Or App at 127. The defendant was charged with and convicted of multiple offenses. He contended on appeal that the trial court erred in failing to merge a guilty verdict on one count of second-degree assault (striking the victim's body) with a guilty verdict on the count of first-degree assault (breaking the victim's wrist). The state replied that the two counts were not subject to merger because there was a pause between the defendant's acts of striking the victim's body and breaking her wrist. *Id.* In concluding that the convictions must merge, we explained that a sufficient pause is not established by the mere passage of time; there must be evidence that one assault had ended before the other began, and no such evidence existed in that case. *Id.* at 130 (citing *Barnum*, 333 Or at 303).

In *State v. Sullivan*, 234 Or App 38, 227 P3d 1186, *adh'd to as modified on recons*, 235 Or App 177, 230 P3d 100

(2010), the evidence showed that the defendant first kicked the victim and threw him to the ground. The defendant kicked the victim again as the victim was trying to get up from the ground. Those actions were the basis for separate first- and second-degree assault charges. Citing *Sanders*, we held that the ensuing guilty verdicts were required to merge under ORS 161.067(3), because there was no evidence that the defendant had paused his conduct so as to afford an opportunity to renounce his criminal intent. 234 Or App at 42.[3]

In this case there was no evidence of a temporal break between defendant's assaultive acts such that a trier of fact could find that one assault had ended before another began. Defendant's conduct was continuous and uninterrupted; there was no evidence that he paused his aggression from the time he pulled the victim off the bed to the final charged act of kicking her in the torso. We therefore conclude that the trial court erred in failing to merge the two fourth-degree assault guilty verdicts into the second-degree assault guilty verdict.

Reversed and remanded with instructions to merge guilty verdicts into one conviction for second-degree assault and for resentencing; otherwise affirmed.

---

[3] In *State v. Watkins*, 236 Or App 339, 236 P3d 770, *rev den*, 349 Or 480 (2010), we again relied on *Sanders* for the proposition that the mere passage of time does not establish the requisite pause and that multiple convictions are permitted under ORS 161.067(3) only where a temporal break shows that one assault has ended before another has begun.