Argued and submitted May 28, convictions on Counts 1 and 2 reversed and remanded with instructions to enter a judgment of conviction for one count of assault in the second degree and for resentencing; otherwise affirmed August 20, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DESHAWNTE LAMAR CAMPBELL,
aka Deshawnte L. Campbell,
*Defendant-Appellant.*

Multnomah County Circuit Court
120130226; A151828

333 P3d 1220

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

### DEVORE, J.

In this criminal case, defendant challenges his conviction on Counts 1 and 2—arising from a violent episode during which he shot a victim multiple times with a BB gun—and raises several assignments of error. We reject without published discussion all of defendant's assignments of error except his challenge to the trial court's merger ruling, which resulted in separate convictions for two counts of second-degree assault, ORS 163.175. He argues that his guilty verdicts on those counts should have merged into a single conviction because there was no evidence of a sufficient pause for defendant to renounce his criminal intent, as required by the "anti-merger" statute, ORS 161.067(3).[1] The state responds that defendant's argument is unpreserved and that, regardless, the record evidences an adequate sufficient pause. We conclude that the matter is preserved and that the trial court erred in imposing separate convictions on those counts. Accordingly, we reverse and remand with instructions to enter a judgment of conviction for one count of assault in the second degree and for resentencing and otherwise affirm.

We review for legal error and are bound by the trial court's factual findings, provided there is sufficient evidence in the record to support them. *State v. Cale*, 263 Or App 635, 637, 330 P3d 43 (2014). We state the facts consistently with that standard and focus on the facts involving defendant's convictions on second-degree assault. Defendant was the victim's boyfriend-pimp.[2] He had a history of physically

---

[1] ORS 161.067(3) provides, in part:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

[2] The relationship is evidenced throughout the record in this case, including the victim's testimony that defendant was her "pimp boyfriend" similar to depictions "on TV," that she could not "sit up around him without *** money," and that they had a history of breaking up and getting back together. Scholars have discussed social identities of pimps, including the "violent boyfriend-pimp," the category for which there is the most data. That identity category reflects

abusing her and threatening the victim and her family. The victim attempted to break off communication with defendant but knew that when defendant fell silent "it probably wasn't * * * good." The day of the incident central to this case, defendant convinced the victim to meet him in a gas station parking lot. He offered assurances that there would not be "any problems" and that he was not going to hit her.

The victim drove to the parking lot and waited, as she had many times in the past. Defendant arrived, got into the victim's truck, and sat next to her in the front passenger seat. He immediately began questioning her about whether she had removed spyware that he had installed on her cell phone. He pulled out a BB gun and began firing at her. The victim tried to protect her face with her hands, while defendant pelted her with BB shots and shouted insults. She "didn't know if [she] was going to die at first" and saw blood splattered "all over" the windshield, her clothes, the steering wheel, and the driver's side window. At some point, she tried to escape, but before she could get all the way out of the truck, defendant "reached across the console, and he snatched [her] by [her] hair" and slammed and locked the doors. Defendant spat in the victim's face and said that he hated her. After defendant had finished shooting ("or [was] out of BBs"), he continued yelling for a period of 30 to 45 minutes. The victim was eventually able to drive away without defendant and seek medical aid. The victim was treated for two shots in the back of her head, three shots in her hand, and two shots in her right leg. She underwent surgery to remove BB pellets and lost feeling in part of her hand. A pellet remained lodged in her hand, because it could not be safely removed.

Defendant was charged with two counts of second-degree assault, ORS 163.175, one count of coercion, ORS 163.275, one count of fourth-degree assault, ORS 163.160, one count of unlawful use of a weapon, ORS 166.220, and one count of tampering with a witness, ORS 162.285. At defendant's bench trial, the victim testified to those facts

an emotional relationship between a pimp and prostitute that is accompanied by cyclical patterns of abuse. *See* Jacqueline B. Helfgott, *Criminal Behavior: Theories, Typologies and Criminal Justice* 301 (2008).

and recapped that she had been shot "in the head, then [her] hand, and then twice in [her] leg." She remembered that, at some point, defendant had used a closed fist to strike her three or four times in the side of her face. During closing arguments, defense counsel argued, among other things, that "Count 2 should merge into Count 1" because "this clearly is one continuous criminal episode" and there was "no pause for reflection." The trial court did not respond to that argument and convicted defendant on all counts. At sentencing, the state argued that the victim tried to escape from the truck before being shot in the leg, and that that action was "sufficient time in this criminal episode to stop and pause and reflect." The state requested that the trial court make "additional findings that Count 2 is a separate criminal episode, also resulting in qualitatively different harm, than in Count 1." The trial court did not make such findings for the purpose of merger and did not merge any guilty verdicts. On appeal, defendant argues that ORS 161.067(3) required the trial court to merge the verdicts on Counts 1 and 2 into a single conviction.

We must briefly consider the state's contention that the matter is not preserved. This court has concluded that, where both parties make "brief statements on their legal positions as to merger" and where the trial court considered merger to be an issue, preservation requirements are deemed satisfied. *State v. King*, 261 Or App 650, 653, 322 P3d 597 (2014); *State v. Sullivan*, 234 Or App 38, 40-41, 227 P3d 1186, *adh'd to as modified on recons*, 235 Or App 177, 230 P3d 100 (2010). "[A]lthough it is true that defendant did not cite ORS 161.067(3) or discuss its specific provisions concerning when merger is required," the trial court may still properly understand the parties' arguments and the issue as one it needs to address. *King*, 261 Or App at 653. That is because we are "mindful that '[p]articularly in criminal cases, in which there is a premium on considerations of cost and speed, the realities of trial practice may be such that fairly abbreviated short-hand references suffice to put all on notice about the nature of a party's arguments.'" *State v. Ohotto*, 261 Or App 70, 73-74, 323 P3d 306 (2014) (quoting *State v. Walker*, 350 Or 540, 550, 285 P3d 1228 (2011)). Further, we have concluded that in a bench trial, a defendant

preserves a challenge to the sufficiency of the evidence by raising the issue in closing argument. *State v. Baranovich*, 241 Or App 280, 284, 249 P3d 1284, *rev den*, 350 Or 571 (2011).

In this case, defendant raised the issue of merger with regard to Counts 1 and 2 by making short-hand references to the statutory requirement that there be a "sufficient pause in defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3); *see King*, 261 Or App at 655. Defendant expressed that this was "one continuous criminal episode" without "pause for reflection." *Compare with State v. Glazier*, 253 Or App 109, 118, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013) (noting that the defendant's "conduct was continuous and uninterrupted" without evidence that defendant "paused"). Understanding that defendant had argued merger, the state presented its position on the issue at defendant's sentencing hearing and urged the trial court to make findings supporting Count 2 as a discrete "criminal episode." *See* ORS 161.067(3) (requiring "the same conduct or criminal episode"). Given the parties' arguments during closing argument and at sentencing, the trial court had knowledge of the parties' positions and an opportunity to render a ruling. Therefore, the issue is preserved. On this record, defendant was not required to raise the argument a second time during sentencing.

On facts like these, our anti-merger statute requires that, in order to be separately punishable, each violation "must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."[3] ORS 161.067(3). Our task is to inquire whether there was legally sufficient evidence of the requisite "sufficient pause." *See Cale*, 263 Or App at 641. A sufficient pause means "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the

---

[3] On appeal, the parties do not dispute that defendant's assault of the victim occurred on a single occasion or assert that more than one statutory provision or victim is involved, as required for the "anti-merger" statute to apply. ORS 161.067(3).

opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). In previous cases dealing with merger in assault cases, this court has emphasized that "[t]he mere passage of time, by itself, does not establish that one assault ended before the other began." *State v. Sanders*, 185 Or App 125, 130, 57 P3d 963 (2002), *adh'd to as modified on recons*, 189 Or App 107, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004).

This court has held that merger of second-degree assault is proper where a defendant's conduct is "continuous and uninterrupted" and where "there was no evidence that [the defendant] paused his aggression[.]" *Glazier*, 253 Or App at 118. For example, in *Glazier*, we concluded that merger was appropriate where the defendant had pulled his wife out of bed and onto the floor, dragged her down the hallway while striking her body against the doorjamb and wall, beat her head against the floor multiple times in the area between the dining and living rooms, and finished by kicking her in her torso. *Id*. at 111.

As another illustration, in *State v. Bryan*, 244 Or App 160, 162, 260 P3d 617 (2011), we accepted the state's concession that merger of attempted first-degree assault was appropriate where the defendant attempted to engage the victim in a fight, pulled a knife from his pocket, and twice "slashed" at the victim without making contact. We concluded that the defendant's counts should merge, because the evidence showed that the defendant's "second slash toward the victim immediately followed his first slash" and there was no evidence of a sufficient pause in the defendant's conduct. *Id*. at 164.

The same conclusion must follow here. The record does not contain sufficient evidence for a reasonable factfinder to determine that one assault ended before another had begun. The victim's testimony only revealed that defendant shot her multiple times with a BB gun and that she made an unsuccessful attempt to escape at some point during the violent episode. The record contains no evidence that defendant's conduct was interrupted by a "significant" event or intervening party. *Cf. King*, 261 Or App at 656 (where an intervening party temporarily subdued the defendant and

the defendant re-entered a fight). The entirety of defendant's conduct occurred in the cab of the victim's truck, without a pause in defendant's aggression. This case is not distinguishable from other cases in which there was a continuous and uninterrupted attack of a victim.

Convictions on Counts 1 and 2 reversed and remanded with instructions to enter a judgment of conviction for one count of assault in the second degree and for resentencing; otherwise affirmed.