STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY ALLEN WEST-HOWELL,
*Defendant-Appellant.*

Marion County Circuit Court
11C47990; A157181

385 P3d 1121

Morgan E. Daniels, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant appeals a judgment convicting him of, among other offenses, two counts of first-degree sodomy, ORS 163.405[1] (Counts 2 and 5). He assigns error to the trial court's failure to merge the guilty verdicts on those two counts into a single conviction under ORS 161.067[2] (the antimerger statute), arguing that the record lacks evidence of a sufficient pause between the two violations. Defendant also raises an unpreserved challenge to the trial court's imposition of court-appointed attorney fees. For the reasons explained below, we reverse the portion of the judgment that requires defendant to pay attorney fees but otherwise affirm.

Defendant and the victim were married and living together. On the date in question, the two had a physical altercation that began in the kitchen when defendant shoved the victim into a cabinet. The encounter carried into the bedroom, where defendant held the victim on the ground and demanded that she perform oral sex on him. Defendant threatened to hurt the victim if she did not do

---

[1] ORS 163.405 provides, in part:

"(1) A person who engages in deviate sexual intercourse with another person or causes another to engage in deviate sexual intercourse commits the crime of sodomy in the first degree if:

"(a) The victim is subjected to forcible compulsion by the actor;

"(b) The victim is under 12 years of age;

"(c) The victim is under 16 years of age and is the actor's brother or sister, of the whole or half blood, the son or daughter of the actor or the son or daughter of the actor's spouse; or

"(d) The victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."

[2] ORS 161.067 provides, in part:

"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in deviate sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

as she was told. The victim performed oral sex on defendant for about five or 10 minutes. Defendant then moved the victim onto the bed and strangled her to the point that she lost consciousness. When the victim regained consciousness, defendant flipped her over onto her stomach and attempted, unsuccessfully, to rape her. The victim fought defendant off and they ended up on the floor, where defendant once again forced the victim to perform oral sex.[3]

A jury convicted defendant of multiple offenses, including, as pertinent here, two counts of first-degree sodomy.[4] At sentencing, defendant argued that the two convictions must merge under ORS 161.067(3). The trial court rejected that argument and entered separate sentences based on its finding that the two crimes were separated by a sufficient pause in which defendant had the opportunity to renounce his criminal intent:

> "The issue in terms of the merger between counts two and *** five *** is not whether the intervening conduct was another crime. It's whether there was intervening conduct that allowed a sufficient pause between counts two and *** five *** for the defendant to re-evaluate his criminal conduct.
>
> "* * * * *
>
> "My analysis *** remains that the sex crimes are distinct from the domestic violence crimes, that he commits the sodomy, he then goes into this choking incident, which again he was not convicted of a crime for that but his own statement is in the record indicating that it happened. So some kind of choking conduct occurred there and then he goes back to sexual conduct and I believe that under the case law that that is a sufficient pause to have allowed the defendant to reconsider his conduct. He could have at that time been satisfied with physical violence or he could have

---

[3] Except as noted, the record is silent as to the duration of the encounter.

[4] This is the second time that this case has been before this court. In *State v. West-Howell*, 261 Or App 115, 323 P3d 335 (2014), we remanded for resentencing on grounds not pertinent to the current appeal. We declined to address defendant's remaining argument, that the trial court erred in failing to merge his two guilty verdicts for sodomy into a single conviction. At resentencing, the trial court once again concluded that Counts 2 and 5 do not merge based on the same reasoning that it had articulated at defendant's initial sentencing. In this opinion, we refer to the trial court's merger analysis at resentencing.

at that time gotten a grip and said I need to stop this and instead he progressed to another sexual violation of the victim."

On appeal, defendant renews his merger argument. We review the trial court's ruling on whether to merge defendant's guilty verdicts for legal error and are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Campbell*, 265 Or App 132, 134, 333 P3d 1220 (2014).

Oregon's "antimerger" statute, ORS 161.067, provides, in pertinent part:

"(3)   When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that *each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.*"

(Emphasis added.)

As used in ORS 161.067(3), the term "sufficient pause" means "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). The duration of a pause and what a defendant did during a pause are questions of historical fact; whether a pause was sufficient to afford the defendant an opportunity to renounce his criminal intent, however, is a question of law. *State v. Reed*, 256 Or App 61, 63, 299 P3d 574, *rev den*, 353 Or 868 (2013). Furthermore, "[i]n order for a pause to be *between* violations, 'one crime must end before another begins.'" *Id.* at 68 (quoting *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006) (emphasis in original)). Thus, to support the entry of multiple convictions

for the same offense under ORS 161.067(3), one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent. *See id.* at 62.

Here, the parties do not dispute that defendant's conduct involved repeated violations of the same statutory provision against the same victim. Rather, the parties disagree as to whether the violations were separated from one another by a "sufficient pause" to afford the defendant an opportunity to renounce his criminal intent.

Defendant contends that his guilty verdicts must merge because the two instances of sodomy occurred as part of an "ongoing attack" against the victim and were separated only by additional criminal conduct. In defendant's view, the fact that he continued to engage in criminal acts between the two instances of sodomy rendered any pause between the two acts of sodomy insufficient to renounce his criminal intent. The state emphasizes that the two crimes were separated by a pause during which defendant moved the victim onto the bed, strangled her until she lost consciousness, and attempted to rape her. Those facts, in the state's view, establish a sufficient pause. We agree.

Here, the trial court determined that the first act of sodomy ended before the second began, based, in part, on its finding that defendant perpetrated different acts of violence against the victim in between those two acts. The trial court acknowledged that defendant was not convicted of a separate crime for that conduct; nevertheless, the court observed that it was "undisputed" that the conduct had occurred, as evidenced by defendant's recorded statement describing the incident. *See State v. Glazier*, 253 Or App 109, 115, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013) ("We are bound by the trial court's findings of fact, so long as they are supported by the evidence."). Moreover, on appeal, defendant does not contest that aspect of the trial court's ruling. Thus, we turn to the issue of whether defendant's acts were separated by a pause sufficient to afford him an opportunity to renounce his criminal intent.

Although we have previously analyzed the "sufficient pause" issue in a number of different settings, we have yet to address the issue in the context presented by this case (*i.e.*, the sufficiency of a pause between sexual crimes, during which the defendant engages in other criminal conduct). Nevertheless, we find instructive our decisions addressing merger in the context of convictions for multiple counts of assault. *See State v. Cale*, 263 Or App 635, 330 P3d 43 (2014) (looking to assault merger cases to determine whether multiple convictions for using a child in the display of sexually explicit conduct must merge under ORS 161.067(3)).

We have held that merger of guilty verdicts for assault is proper in cases where the record reflects a "continuous and uninterrupted attack of a victim." *Campbell*, 265 Or App at 139. In *Campbell*, the defendant was convicted of multiple counts of assault for shooting the victim several times with a BB gun while sitting inside the victim's truck. At some point during the incident, the victim attempted to run from the truck but was pulled back by the defendant before she could escape. *Id.* at 135. On appeal, we determined that the defendant's guilty verdicts for assault must merge because there was no evidence from which a reasonable factfinder could have concluded that one assault ended before another began. *Id.* at 138-39. We noted that the entire violent episode occurred in the cab of the victim's truck, without interruption by any "significant" event and without a pause in the defendant's aggression. *Id.*

By contrast, in *State v. King*, 261 Or App 650, 656, 322 P3d 597 (2014), we held that the trial court correctly entered separate convictions for multiple counts of assault. The defendant in that case punched the victim, a bar employee, after being asked to leave the bar. *Id.* at 651. The victim managed to temporarily subdue the defendant by wrestling him to the ground; however, the defendant broke free and continued beating the victim with the help of a friend. The defendant was convicted of two counts of assault, which the trial court declined to merge based on its observation that the defendant "should have * * * stopped," but instead chose to reenter the fray and commit a second assault. We affirmed the trial court's entry of separate

convictions, concluding that "something of significance" had occurred in between the first and second assaults. *Id.* at 656. We explained:

> "[T]the evidence shows that defendant initially assaulted the victim by punching him, and that assault ended with the victim getting the better of defendant, restraining defendant on the ground. Rather than renounce his criminal intent at that point, however, defendant instead joined with his friend in a two-on-one assault on the victim, and hit the victim with a bar stool. In those circumstances, we conclude that the trial court's finding that there was a sufficient pause between the assaults for defendant to have renounced his criminal intent is supported by evidence in the record."

*Id.*

Defendant argues that this case is like *Campbell* because the record reflects a continuous and uninterrupted course of assaultive conduct.[5] In *Campbell*, however, all of the assaultive activity was of the same quality: shooting the victim with a BB gun. Here, two acts of sodomy were separated by assaultive conduct of a different nature. We reject defendant's contention that, because there was no cessation in defendant's *overall criminal conduct*, the pause between the two acts of sodomy was insufficient in scope or quality to afford defendant the opportunity to renounce his criminal intent.[6] The issue is not, as defendant argues, whether there existed a pause sufficient to renounce *any* criminal intent.

---

[5] We note that defendant was acquitted of the attempted second-degree assault charge related to his conduct between the two acts of sodomy. For purposes of this discussion, we will accept his characterization of that conduct as "criminal conduct."

[6] The cases cited by defendant in support of that contention are inapposite. *See, e.g., Glazier,* 253 Or App at 118 (concluding that "there was no evidence of a temporal break between defendant's assaultive acts such that a trier of fact could find that one assault had ended before another began"); *State v. Sanders,* 185 Or App 125, 128, 57 P3d 963 (2002) ("The state does not suggest that there is any direct evidence of a pause in defendant's conduct of any measurable duration [but] argues that a pause may be inferred from the fact that defendant decided to hit the victim in the head and from the fact that the victim had enough time to hold up her arm to ward off the blow."); *Huffman,* 234 Or App at 187 (the trial court erred in failing to merge defendant's convictions for first-degree theft where there was "no evidence in [the] record that one theft ended before the next began"). The common thread among those cases is the absence of evidence from which a trier of fact could conclude that one crime ended before the next began.

Rather, the operative question is whether the pause between the two acts of sodomy was sufficient to allow defendant to renounce his intent to commit sodomy, thereby precluding merger of his convictions for *that* crime. That defendant continued to engage in other criminal acts of a qualitatively different nature did not render his conduct "continuous and uninterrupted" so as to require merger of the sodomy convictions.

The trial court correctly concluded, based on its findings, that there was a sufficient pause between the first and second acts of sodomy. The evidence shows that the first act of sodomy took place on the floor and lasted for five to 10 minutes. At the conclusion of that act, defendant moved the victim onto the bed, strangled her until she lost consciousness and, after she came to, attempted to rape her. The defendant then moved the victim back onto the floor before sodomizing her again. Thus, after the victim had fought off defendant's attempted rape, defendant made another, deliberate choice to sodomize the victim a second time. *See Reed*, 256 Or App at 70 (a defendant's guilty verdicts for attempting to elude a police officer did not merge where the defendant "had sufficient time to make a new, independent decision whether to elude the next pursuer"). As the trial court observed, defendant "could have at that time been satisfied with physical violence" or could have "gotten a grip" and ceased his conduct. Instead, defendant formed the intent to sodomize her again, then did so. Accordingly, the trial court did not err when it entered separate convictions for Counts 2 and 5 under ORS 161.067.

We turn to defendant's second assignment of error, in which defendant argues that the trial court erred in ordering him to pay $3,710 in court-appointed attorney fees without first determining whether defendant "is or may be able to pay" them. *See* ORS 151.505(3) ("The court may not require a person to pay costs under this section unless the person is or may be able to pay the costs."); ORS 161.665(4) (same); *State v. Pendergrapht*, 251 Or App 630, 634, 284 P3d 573 (2012) ("[A] court cannot impose attorney fees based on a record that is silent regarding the defendant's ability to pay those fees."). Defendant points to the absence of any information in the record regarding defendant's financial

circumstances and argues both that "it is unlikely that his financial status will improve while he is incarcerated" and that his prospects upon release from prison are "completely unknown." Defendant acknowledges that his assignment of error is unpreserved but requests that we review it as plain error. ORAP 5.45(1) (an appellate court may consider an error of law apparent on the record).

The state concedes that the trial court plainly erred in imposing fees when the record was silent as to defendant's ability to pay them. *See State v. Coverstone*, 260 Or App 714, 320 P3d 670 (2014) (imposition of court-appointed attorney fees based on a record that is silent regarding the defendant's ability to pay constitutes plain error). We agree and accept the state's concession. We further conclude that it is appropriate to exercise our discretion to correct the error in this case for the reasons articulated in *State v. Kurtz*, 273 Or App 741, 743-44, 359 P3d 586 (2015), *rev den*, 358 Or 833 (2016) (reversing as plain error the imposition of $2,440 in court-appointed attorney fees based on the amount of fees awarded, 10-year prison term, and the absence of evidence in the record from which the trial court could conclude that the defendant "is or may be able to pay" the fees).

Portion of judgment requiring defendant to pay attorney fees reversed; otherwise affirmed.