Submitted July 30, 2018; convictions on Counts 2, 4, 6, and 8 vacated and remanded; remanded for resentencing, otherwise affirmed March 18; petition for review denied August 27, 2020 (366 Or 827)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSE OMAR ORTIZ-RICO,
*Defendant-Appellant.*

Washington County Circuit Court
16CR49970; A163380

462 P3d 741

Defendant appeals a judgment of conviction for, among other offenses, four counts of first-degree rape (Counts 1 through 4) and four counts of first-degree sexual abuse (Counts 5 through 8). In several assignments of error, defendant argues that the trial court erred in failing to merge the guilty verdicts in Counts 1 through 4 and in failing to merge the guilty verdicts in Counts 5 through 8. Defendant argues that merger is required because, under ORS 161.067(3), the underlying criminal acts were not separated by sufficient pauses in his conduct. *Held*: The trial court did not err in declining to merge Counts 1 and 3 or Counts 5 and 7. As to the remaining counts, however, the trial court declined to make factual findings regarding merger. Therefore, the Court of Appeals vacated and remanded those convictions for further consideration of merger under ORS 161.067(3).

Convictions on Counts 2, 4, 6, and 8 vacated and remanded; remanded for resentencing; otherwise affirmed.

Janelle F. Wipper, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Neil F. Byl, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.

DEHOOG, P. J.

Convictions on Counts 2, 4, 6, and 8 vacated and remanded; remanded for resentencing; otherwise affirmed.

## DEHOOG, P. J.

Defendant appeals a judgment of conviction for, among other offenses, four counts of first-degree rape (Counts 1 through 4), ORS 163.375, and four counts of first-degree sexual abuse (Counts 5 through 8), ORS 163.427.[1] We write to address defendant's second through seventh assignments of error, in which he makes a combined argument that the trial court erred in failing to merge the guilty verdicts in Counts 1 through 4 into a single conviction for first-degree rape and in failing to merge Counts 5 through 8 into a single conviction for first-degree sexual abuse.[2] Defendant alternatively argues that the court erred in failing to merge Count 1 with Count 2, Count 3 with Count 4, Count 5 with Count 6, and Count 7 with Count 8, resulting in only two rape and two sexual-abuse convictions. Defendant contends that merger is required under ORS 161.067(3) because the underlying criminal acts perpetrated against the victim, K, were not separated by sufficient pauses in his conduct. For the reasons that follow, we conclude that the trial court did not err in declining to merge Counts 1 and 3. In light of our conclusion regarding Counts 1 and 3, it also was not error for the trial court to decline to merge Counts 5 and 7, as the conduct that constituted the rape charges also constituted the sexual-abuse charges. Furthermore, defendant's argument that the trial court should have entered only single convictions for rape and sexual abuse also necessarily fails. However, as we further explain, we are unable to determine whether merger was appropriate in any way with regard to Counts 2, 4, 6, and 8. Therefore, we vacate defendant's convictions as to those counts, remand for further consideration of merger, and remand for resentencing. We otherwise affirm.[3]

---

[1] As we understand the record, the state prosecuted the conduct underlying each of the rape counts as both rape and sexual abuse, such that Count 1 (first-degree rape) and Count 5 (first-degree sexual abuse) involved the same conduct, as did Counts 2 and 6, 3 and 7, and 4 and 8.

[2] In his first assignment of error, defendant contends that, in a manner analogous to erroneously instructing the jury, the trial court erred when, in reaching its verdict, it determined that a drug-induced psychosis could not constitute a mental disease or defect. We reject that assignment of error without further discussion.

[3] Our description of the record on appeal is not intended to limit the trial court's assessment of the record when, on remand, it makes the findings of fact from which it will draw its legal conclusions.

Because defendant was found guilty, we state the facts underlying the trial court's rulings "in the light most favorable to the state; that is, in the light most favorable to the trial court's conclusion that merger was not required." *State v. Dearmitt*, 299 Or App 22, 24, 448 P3d 1163 (2019).

Defendant and K were former high school friends who had not seen each other for nearly 10 years when defendant contacted K through Facebook. The two decided to meet in person and, in fact, met for about an hour at K's house. Defendant told K that he might have some upcoming work opportunities for her. About a week later, defendant called K and said that he wanted to talk to her about one of those opportunities. K agreed to meet defendant at a store near her house.

When K arrived at the store, she found defendant seated in his car and got in with him. Defendant told K that he needed to drop some things off at his own house, which K thought was nearby, and drove off with K in his car. When defendant drove further than K had anticipated, K became uncomfortable and told defendant that she needed to go home. Defendant ignored K and continued driving.

When they arrived at defendant's house, K refused his request to go inside with him, which appeared to anger defendant. About 15 minutes later, defendant returned, got back in the car, and sped off with K. K tried to call a friend on her cell phone, but defendant snatched the phone from her hands, tore it apart, and tossed the pieces into the back seat.

Defendant eventually pulled his car off the road and drove into a secluded area, where K attempted to get out. Defendant responded by hitting K in the face, pulling her car door closed, and repeatedly hitting her when she tried to fight back. K screamed and defendant reacted by covering her mouth with his hands, putting his bodyweight on her, and telling her to "shut up." Defendant then forcibly raped K as he held her down.

It was light outside when that rape began. Defendant continued to rape K in the front seat of his car over a course of hours, but he had trouble maintaining an erection, and,

according to K, he did not ejaculate.[4] By the time defendant stopped, it was dark.

K recalled defendant next moving some tools from the back seat to the rear floorboard and then climbing into the back seat. At that time, K again attempted to escape through the passenger door, but defendant dragged her into the back seat with him, moving some more tools to the front to make room. K told defendant that she was too swollen for him to penetrate her and that it hurt too much to continue, but he raped her again anyway. That second rape continued for about 30 minutes, after which defendant stopped long enough for K to fall asleep, which she did, lying either on her side or her stomach.

When K awoke, defendant was attempting to rape her a third time, this time from behind. Again defendant was unable to maintain an erection, and again K pleaded with him to stop because he was hurting her too much. Despite renewed efforts by K to fight defendant off, he ultimately succeeded in penetrating her again.

After raping K that third time, defendant tried forcing her to perform oral sex on him by pushing her head down and standing up slightly. K cried and said that she did not want to, asking defendant how he could do this to her when they had known each other for so long. Nonetheless, defendant persisted and eventually succeeded in forcing K to perform oral sex. After he did so, defendant raped K a fourth time, by which time it had begun to get light. To K's knowledge, defendant never ejaculated.

As a result of defendant's conduct against K, he was charged with, among other things, the four counts of rape and four counts of sexual abuse at issue in this appeal. Defendant waived his right to a jury and, following a bench trial in which K testified to the foregoing events, the trial court found defendant guilty on all counts. At sentencing, defendant argued that the court should merge the guilty verdicts in Counts 1 through 4 into a single conviction for first-degree rape and the guilty verdicts in Counts 5 through

---

[4] As the state notes, ejaculation, or "emission," is not required to complete the crime of rape. ORS 163.375; ORS 163.305(7).

8 into a single conviction for first-degree sexual abuse. The
trial court rejected that request, stating:

> "What I am going to do to make sure that this survives any
> sort of appeal issues, that I find—because specifically that
> we are talking about an episode that happened for over
> eight hours, and because we are talking about [K] being
> moved from the front seat and the back seat—to me, that
> also shows an interruption of criminal behavior—that this
> is appropriate for some sort of consecutive sentence.
>
> "It is obvious to this Court that this criminal offense for
> which the consecutive sentence is contemplated, was not
> merely an incidental violation of separate statutory pro-
> vision in the course of the commission of a more serious
> crime, but rather an indication of the defendant's willing-
> ness to commit more than one criminal offense.
>
> "And—because of the length of time, and the fact that the
> victim was moved from one area of the car, this caused and
> created a risk of causing greater quantitatively different
> loss, injury or harm to the victim."[5]

The court then sentenced defendant, entering sepa-
rate convictions on all counts and running the sentence for
Count 3 consecutive to the sentence imposed on Count 2.

> "Count 3 is Rape in the First Degree, 100 months Measure
> 11 time. That will be consecutive to Count 1 and Count 2.
> * * * Again, for the record, I am using Count 3 to identify as
> the count that shows the rape in the back seat."[6]

Defendant asked the trial court whether it was specifically
finding that Count 3 had been a separate act, and the court

---

[5] We note that the court, in making its ruling, used language from ORS
137.123, which governs the imposition of consecutive sentences. We have held
that it is an error for a trial court to consider consecutive sentencing pursuant to
ORS 137.123 without first making a merger determination under ORS 161.067.
*State v. Stanton*, 266 Or App 374, 379, 337 P3d 955 (2014). In this case, however,
it appears from the record that the court considered both merger and consecutive
sentences in making its ruling as to Count 3. That is, though the court used
language from ORS 137.123, the court also remarked that the facts "show[ed] an
interruption of criminal behavior." That statement, in the context of the merger
and sentencing arguments presented by the parties, suggests that the court
properly conducted a merger analysis as to that count.

[6] We understand the trial court to have considered the second alleged rape—
that is, the rape that occurred after defendant moved K from the front seat to the
back seat of the car—as Count 3. Therefore, we do the same.

affirmed that it was. Defendant next asked whether the court was finding that Counts 1 and 2 had been the same act. The court replied that it was "not making that finding." When defendant asked the court to clarify that it was "not making any ruling as far as that it was a separate act or that it was from the same act," the court responded, "Correct." Defendant then objected and argued that, in the absence of such a finding, Count 2 should merge with Count 1. Defendant further argued that Count 4 should merge with Count 3, and that the court should apply the same analysis to the corresponding sexual-abuse charges. The court noted defendant's objection but declined to do so.

On appeal, defendant renews his merger argument. Specifically, citing ORS 161.067(3), defendant argues that the guilty verdicts from Counts 1 through 4 should all merge into a single conviction for first-degree rape and that the guilty verdicts from Counts 5 through 8 should all merge into a single conviction for first-degree sexual abuse. That, defendant argues, is required because the acts underlying his multiple violations of the same statutes were not separated by a "sufficient pause" in his criminal conduct to warrant separate convictions. In the alternative, defendant argues that, even if his act of moving K from the front seat to the back seat of the car created a sufficient pause for purposes of ORS 161.067(3), the remaining rape counts arising from his conduct in each location should merge, as should the related sexual-abuse charges.[7]

The state responds that the record justified the trial court's entry of four convictions for first-degree rape because (1) defendant's multiple acts of rape occurred over the course of eight hours; (2) "each rape was complete before the next began"; and (3) each rape "was separated from the next rape by (a) a significant temporal break; (b) conduct by defendant that constituted a crime other than rape; (c) discussion between defendant and the victim during which the victim tried to dissuade defendant from harming her further; or (d) a combination of some or all of those factors." As such, the state contends that each rape was

---

[7] Defendant does not dispute that, if any pair of rape charges do not merge, the corresponding pair of sexual-abuse charges likewise do not merge.

separated by a sufficient pause in which defendant had an opportunity to renounce his criminal intent. For largely the same reasons, the state contends that the trial court did not err in entering separate convictions for first-degree sexual abuse on Counts 5 through 8.[8]

We review the trial court's merger rulings for legal error. *Dearmitt*, 299 Or App at 24 (applying that standard). In reviewing merger rulings, we are bound by the trial court's factual findings, so long as there is constitutionally sufficient evidence in the record to support them. *State v. West-Howell*, 282 Or App 393, 397, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017).

When, as here, multiple charges arise from a single criminal episode, "criminal conduct that violates only one statutory provision will yield only one conviction unless the so-called 'antimerger' statute, ORS 161.067, operates so as to permit the entry of multiple convictions." *State v. Reeves*, 250 Or App 294, 304, 280 P3d 994, *rev den*, 352 Or 565 (2012). ORS 161.067(3) provides, in part:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a *sufficient pause* in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."[9]

(Emphasis added.)

Thus, under ORS 161.067(3), criminal conduct occurring within the course of a single criminal episode and violating only one statutory provision can result in multiple convictions, but only if each violation of the statute is

---

[8] The state also notes that each count of sexual abuse in the indictment was alleged to have been part of the same act that constituted a corresponding count of first-degree rape, as alleged in Counts 1 through 4.

[9] ORS 161.067 has been amended since defendant's commission of the offenses; however, because those amendments do not affect our analysis, we refer to the current version of the statute in this opinion.

separated from each other violation by a "sufficient pause" in the defendant's conduct. In the context of ORS 161.067(3), a "sufficient pause" is "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). The duration of a pause and what occurred during that pause are questions of fact, while the question of whether the pause is "sufficient" to allow for multiple convictions is one of law. *State v. Reed*, 256 Or App 61, 63, 299 P3d 574, *rev den*, 353 Or 868 (2013).

"In order for a pause to be *between* violations, 'one crime must end before another begins.'" *Id.* at 68 (quoting *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006) (emphasis in *Reed*)); *see also West-Howell*, 282 Or App at 397-98 ("Thus, to support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." (Emphasis in original.)). Therefore, merger is appropriate where there is no evidence that would permit a reasonable factfinder to find that one crime had ended before the other began. *State v. Campbell*, 265 Or App 132, 138, 333 P3d 1220 (2014).

Here, there is no dispute that defendant's conduct occurred in a single criminal episode and involved repeated violations of the same two statutory provisions against the same victim. Therefore, the issue for us to decide is whether each violation was separated from each other violation of the same statute by a pause sufficient to have afforded defendant an opportunity to renounce his criminal intent. *See* ORS 161.067(3).

We first consider the trial court's explicit determination that the second rape, which occurred after defendant had pulled K into the back seat of the car (and which, for unknown reasons, the court identified as Count 3 rather than Count 2) was a separate act—that is, an act separated

by a sufficient pause—from the initial rape that took place in the front seat of the car. Defendant acknowledges that those rapes were separated by K attempting to escape, defendant pulling K back into the car, defendant making room in the back seat by moving items to the floorboard and the front seat, and defendant dragging K into the back seat. Defendant argues, however, that, under *State v. Glazier*, 253 Or App 109, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013), and *Campbell*, 265 Or App 132, that evidence does not support the finding that those two violations of the first-degree rape statute (and the first-degree sexual-abuse statute) were separated by a sufficient pause. That is because, defendant contends, the state failed to establish that a significant intervening event or pause in defendant's aggression occurred. *See State v. Nelson*, 282 Or App 427, 447, 386 P3d 73 (2016) (concluding that merger of three counts of sexual abuse was required when "the entire violent episode at issue occurred in the confined space of the bathroom, without interruption by any significant event, and without pause in defendant's aggression" (internal quotation marks omitted)). We disagree that merger was required as to those counts.

In *Glazier*, the defendant was convicted of one count of second-degree assault and two counts of fourth-degree assault after pulling the victim off of a bed by her ankle, causing her to hit her head and hip on the hardwood floor. 253 Or App at 111. The defendant then dragged the victim into the hallway, hitting her left hip on the doorjamb and her right hip on the wall. *Id.* The defendant continued to drag the victim into another area, banged her head on the floor four or five times, and kicked her in the torso. *Id.* We concluded that there was no evidence of a temporal break in the defendant's assaultive conduct from which a trier of fact could find that one assault had ended before another began. *Id.* at 118. We therefore concluded that the two fourth-degree assault charges merged into the second-degree assault charge because the "[d]efendant's conduct was continuous and uninterrupted; there was no evidence that he paused his aggression from the time he pulled the victim off the bed to the final charged act of kicking her in the torso." *Id.*

We reached a similar conclusion in *Campbell*, where the defendant was convicted of two counts of second-degree assault after engaging in a violent episode in which he shot the victim multiple times with a BB gun. 265 Or App at 134. The victim and the defendant were seated in the victim's parked truck when the defendant began shooting the victim while shouting insults at her. *Id.* at 135. During the attack, the victim attempted to escape from the truck, but the defendant pulled her back in by her hair, slammed the door shut, and continued firing at her. *Id.* We concluded that the record did "not contain sufficient evidence for a reasonable factfinder to determine that one assault [had] ended before another had begun." *Id.* at 138. Because the "entirety of [the] defendant's conduct occurred in the cab of the victim's truck, without a pause in [the] defendant's aggression," merger of the assault charges was required. *Id.* at 139.

The state responds that the circumstances in this case differ significantly from those in *Glazier* and *Campbell* because the record contains evidence from which a reasonable factfinder could determine that there was a sufficient pause between the first and second rapes (and, therefore, the first and second instances of sexual abuse). First, the state points out that rape occurs upon penetration[10] and argues that the testimony shows that any penetration associated with the first rape had ceased before defendant commenced penetrating K in the back seat. The state additionally contends that this case more closely resembles the record in *West-Howell*, in which we concluded that merger was not required for two counts first-degree sodomy. 282 Or App at 395.

In *West-Howell*, the defendant held the victim to the ground and demanded oral sex. 282 Or App at 395-96. Once the victim performed oral sex, the defendant moved the victim onto a bed and strangled her until she lost consciousness. *Id.* at 396. When the victim regained consciousness, the defendant unsuccessfully tried to rape her before forcing her to perform oral sex a second time. *Id.* The defendant argued that merger was required because, "like *Campbell*

---

[10] *See* ORS 163.305(7) ("'Sexual intercourse' has its ordinary meaning and occurs upon any penetration, however slight; emission is not required.").

\* \* \* the record reflects a continuous and uninterrupted course of assaultive conduct." *Id*. at 400. We rejected that argument, explaining that

> "[t]he issue is not, as [the] defendant argues, whether there existed a pause sufficient to renounce *any* criminal intent. Rather, the operative question is whether the pause between the two acts of sodomy was sufficient to allow [the] defendant to renounce his intent to commit sodomy, thereby precluding merger of his convictions for *that* crime. That [the] defendant continued to engage in other criminal acts of a qualitatively different nature did not render his conduct 'continuous and uninterrupted' so as to require merger of the sodomy convictions."

*Id*. at 400-01 (emphasis in original). Because the defendant could have ceased his conduct and "gotten a grip," but instead formed the intent to sodomize the victim a second time, there was a sufficient pause between the two acts of sodomy; in other words, "something of significance" had occurred between each sodomy. *Id*.

We agree with the state that there was sufficient evidence in this case to support the trial court's determination that the first and second rapes were separated by a sufficient pause that afforded defendant the opportunity to renounce his criminal intent. That is, the record contained evidence sufficient to allow a reasonable factfinder to find that defendant's initial criminal conduct had ended before he engaged in further criminal conduct in the back seat of the car. For one thing, unlike in *Glazier*, where there was no evidence of a pause in the defendant's assault on the victim, here there was a temporal break between the rapes. K testified that defendant stopped raping her in the front seat at least long enough to move items from the back seat of the car to the rear floorboard. She also testified that defendant then climbed into the back seat and moved other items from there to the front seat before turning his attention back to her.

For another thing, although, like in *Campbell*, the entire incident occurred in a car, and K's attempt to escape was prevented by defendant, the evidence supporting the court's finding of a sufficient pause was not limited to K's unsuccessful attempt to escape. In addition to preventing

K from escaping, defendant cleared the back seat, dragged K from the front seat to the back, and evidently ignored her pleas not to be raped again. That is, before defendant began raping K a second time, she had told him that she could not continue. K testified that she told defendant that "it hurt and that he wasn't going to be able to do what he was trying to do because it was like [her] body wasn't—like [she] was too swollen[.]" But, as K also testified, "he tried anyways." Thus, unlike the cases defendant relies on, in this case, there was considerable evidence both of temporal breaks and of defendant's engagement in qualitatively different conduct between the first and second rapes. When viewed in the light most favorable to the state, we conclude those facts are sufficient to support the trial court's determination that a sufficient pause separated the two acts of rape.

We turn to the remaining rape and sexual-abuse convictions to which defendant assigns error. Unlike the trial court's ruling on Count 3—which, as we noted, included an implicit ruling on the corresponding sexual-abuse count—the trial court did not make findings of fact regarding merger of the remaining counts. Rather, the court expressly declined to make a finding that the counts were "separate acts." Where the trial court makes no express findings, we "presume that the facts were decided in a manner consistent with the trial court's ultimate conclusion." *State v. McConville*, 243 Or App 275, 277, 259 P3d 947 (2011) (internal quotation marks omitted). Where, however, as here, the trial court has expressly declined to make such findings, we will not make such presumptions. Therefore, we must vacate the convictions on Counts 2, 4, 6, and 8 and remand to the trial court to make additional findings as to whether there were sufficient pauses separating the conduct underlying those counts to justify separate convictions on each of them. *See State v. Stanton*, 266 Or App 374, 380, 337 P3d 955 (2014) ("The trial court was required to determine whether [the] defendant's guilty verdicts should merge or whether an exception to merger applied.").

Convictions on Counts 2, 4, 6, and 8 vacated and remanded; remanded for resentencing; otherwise affirmed.