Argued and submitted August 16, 2019; convictions on Counts 12 and 13 reversed and remanded for entry of a judgment of conviction for one count of first-degree sexual abuse, remanded for resentencing, otherwise affirmed October 28; on appellant's petition for reconsideration filed December 9, 2020, and respondent's response to petition for reconsideration filed January 11, reconsideration allowed by opinion March 10, 2021
See 309 Or App 598, ___ P3d ___ (2021)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# RONALD EDWIN BRADLEY II,
*Defendant-Appellant.*

## Washington County Circuit Court
## C081099CR; A166375

477 P3d 409

Defendant appeals a judgment of conviction for two counts of first-degree sexual abuse and one count of first-degree sodomy. Defendant argues that the trial court erred in failing to merge the guilty verdicts for the two counts of first-degree sexual abuse into a single conviction because there was not a "sufficient pause," ORS 161.067(3), between those two acts. *Held*: The trial court erred in entering multiple convictions where the state failed to prove a significant intervening event between either the first or second acts of sexual abuse, and the record shows that there was no temporal break or pause in defendant's aggression between the two acts of sexual abuse such that one crime ended before another began.

Convictions on Counts 12 and 13 reversed and remanded for entry of a judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

D. Charles Bailey, Jr., Judge.

Meredith Allen, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

ORTEGA, P. J.

Convictions on Counts 12 and 13 reversed and remanded for entry of a judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

**ORTEGA, P. J.**

This is the third time this case is before us. A jury convicted defendant of nine counts of sexual abuse in the first degree (Counts 1-7, 12, and 13), two counts of unlawful sexual penetration in the first degree (Counts 10 and 11), and one count of sodomy in the first degree (Count 14). Following a successful appeal, we reversed defendant's convictions and remanded for a new trial on Counts 1 to 7, 10, and 11, *State v. Bradley*, 253 Or App 277, 290 P3d 827 (2012) (*Bradley I*), and we remanded for resentencing on the affirmed counts (Counts 12-14). Defendant was resentenced but successfully challenged the resentencing judgment, and we again reversed and remanded for a new resentencing on Counts 12 to 14, *State v. Bradley*, 281 Or App 696, 383 P3d 937 (2016) (*Bradley II*), *rev den*, 361 Or 645 (2017). Defendant was again resentenced on remand.

Defendant now appeals that resentencing judgment, raising three assignments of error. We reject defendant's first assignment of error without written discussion. As to his second assignment of error, we agree with defendant that the trial court erred in failing to merge the guilty verdicts on Counts 12 and 13, which obviates the need to reach his third assignment of error challenging the imposition of consecutive sentences on those counts.

The relevant facts are as follows. Defendant dated B, who is the aunt of the victim, Z. Defendant and B lived in B's mother's converted garage for a few years, and Z was a frequent visitor. One day when Z was four or five years old, defendant sexually abused her. At trial, Z testified that she and defendant were sitting on the floor in the converted garage either watching TV or playing video games, and defendant told Z to "come over towards him." While keeping his pants on, defendant took his penis out of his pants and told Z to touch it. Defendant showed Z how to "grab[]" his penis with her hand. Defendant then told her to put her mouth on his penis, and she did. While they were still sitting on the floor in the same location, defendant then touched her vagina with his hands under her clothes. Z testified that her pants were pulled down but did not come completely off, although she could not recall whether she or defendant

pulled her pants down. The sexual abuse stopped when Z's sister, R, walked in the door to say hello. R left after a few minutes, and defendant told Z not to tell anybody what had happened.

Addressing the duration of the incident, Z testified to the following:

> "[Defense Counsel]:   And this event is a very short event, right?
>
> "[Z]:   Yes.
>
> "[Defense Counsel]:   It didn't last very long, correct?
>
> "[Z]:   No.
>
> "[Defense Counsel]:   You're saying that *** this event happened and that *** it was interrupted at some point [when your sister came into the room]. Is that right?
>
> "[Z]:   Yes."

Based on the sexual contact[1] of defendant instructing the victim to touch his penis and defendant touching the victim's vagina, defendant was charged with two counts of first-degree sexual abuse, ORS 163.427[2]—Count 12 (touching of the victim's vaginal area) and Count 13 (causing the victim to touch defendant's penis). Defendant was also charged with one count of first-degree sodomy (Count 14), ORS 163.405 (deviate sexual intercourse).[3]

During sentencing, defendant argued that the guilty verdicts for Counts 12 and 13 should merge into a

---

[1] For purposes of first-degree sexual abuse, "sexual contact" is defined as the "touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." ORS 163.305(6) (2007), *amended by* Or Laws 2009, ch 770, § 1; Or Laws 2017, ch 318, § 2; Or Laws 2017, ch 634, § 17.

[2] As pertinent here, first-degree sexual abuse includes subjecting a person under 14 years old to sexual contact. ORS 163.427(1)(a)(A) (2007). First-degree sexual abuse is a Class B felony. ORS 163.427(2) (2007).

[3] As pertinent here, first-degree sodomy includes engaging in, or causing another to engage in, "deviate sexual intercourse" with a person under 12 years of age. ORS 163.405(1)(b) (2007), *amended by* Or Laws 2017, ch 318, § 5; ORS 163.305(1) (2007) (defining "deviate sexual intercourse" as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another"). First-degree sodomy is a Class A felony. ORS 163.405(2) (2007).

single conviction for first-degree sexual abuse under ORS 161.067(3). During the discussion on whether those counts should merge, the court agreed with defendant that both charges arose from the same statute, but it noted as significant that each charge in the indictment contained different language—one count related to the touching of the penis and the other the touching of the vagina. The court ultimately denied the motion and entered separate convictions for each count, stating,

> "In regards to the merge[r] issue, because I think we need to start there before the Court then imposes the next sentence. Though I appreciate the arguments made in regard to *** Counts 12 and 13, whether they should merge, there is clearly different language in the charg[ing] instrument and testimony to support behavior for which a consecutive sentence can be imposed, because it was not merely an incidental violation of a separate statutory provision in the course of a commission of a more serious crime, but rather was an indication of defendant's willingness to commit more than one criminal offense.

> "Here, it was clear that there was progression being used by the defendant to get the defendant to ultimately perform the sodomy that was performed and cut short as the result of somebody else coming in through a door. ***

> "Therefore, in regards to Counts 12 and [13], merger would not be legally appropriate."[4]

On appeal, defendant argues that the trial court erred in concluding that Counts 12 and 13 do not merge. First, defendant contends that the indictment's reference to different body parts does not prevent merger. Second,

---

[4] In articulating its merger ruling, the court relied exclusively on language from the consecutive sentencing statute. *See* ORS 137.123(5)(a) (stating that a court has discretion to impose consecutive terms of imprisonment on convictions arising out of continuous and uninterrupted conduct if the court finds that the criminal offense "was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense"). Therefore, from the record, it appears that the court applied the incorrect legal standard to its merger analysis. However, because the parties do not raise the issue, and we ultimately conclude that the court erred even assuming correct application of the legal standard, we assume for the sake of argument that the court understood that the merger issue was governed by ORS 161.067(3) rather than ORS 137.123(5)(a).

defendant argues that the verdicts should merge because there was not a "sufficient pause," ORS 161.067(3), between defendant's commission of the two counts of sexual abuse. Defendant acknowledges that, interposed between the conduct underlying the sexual abuse counts, defendant committed a different crime—first-degree sodomy. However, defendant contends that that conduct does not create a sufficient pause for purposes of merger because the three offenses were committed continuously and without an intervening event between each instance of sexual touching.

The state does not defend the trial court's conclusion that the indictment's reference to different body parts prevents merger. The state argues only that the defendant's commission of first-degree sodomy in between the two incidents of sexual abuse establishes a pause sufficient to allow defendant the opportunity to renounce his criminal intent, which supports the trial court's conclusion that the first-degree sexual abuse counts do not merge.

We review the trial court's ruling on whether to merge the guilty verdicts for legal error and are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Reed*, 256 Or App 61, 63, 299 P3d 574, *rev den*, 353 Or 868 (2013).

When multiple charges arise from the same criminal episode, "criminal conduct that violates only one statutory provision will yield only one conviction unless the so-called 'antimerger' statute, ORS 161.067, operates so as to permit the entry of multiple convictions." *State v. Reeves*, 250 Or App 294, 304, 280 P3d 994, *rev den*, 352 Or 565 (2012). As relevant here, ORS 161.067(3) provides:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

Thus, under ORS 161.067(3), a court is permitted to enter multiple convictions for criminal conduct involving the same conduct or criminal episode, same victim, and same statutory provision only if the violations are separated from one another by a "sufficient pause" in the defendant's criminal conduct.

We begin by briefly addressing whether defendant's contact with different body parts in the commission of the sexual abuse prevents merger. As previously noted, the state does not defend that legal basis of the court's ruling, a concession that is well-taken. To the extent the court's reasoning was that defendant's contact with different body parts did not constitute "the same conduct" within the meaning of ORS 161.067(3), the court erred. Subsequent to the trial court's ruling, in *State v. Nelson*, 282 Or App 427, 433-42, 386 P3d 73 (2016), we addressed and rejected the argument that, "because the jury found defendant guilty of three counts of sexual abuse each based on 'contact with a different body part,' the three counts do not involve the 'same conduct'" under ORS 161.067(3). For the same reasons we articulated in *Nelson*, ORS 161.067(3) does not prevent merger of multiple counts of sexual abuse convictions that involve contact with different body parts, and the trial court erred in concluding otherwise.[5]

We turn next to whether the evidence supports the implicit finding that there was a "sufficient pause" between defendant's commission of the sexual abuse counts. A "sufficient pause" within the meaning of ORS 161.067(3) occurs when there is "a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords

---

[5] The court did not explain its legal reasoning for concluding that ORS 161.067 prevents merger when the conduct underlying first-degree sexual abuse involves different body parts. However, the record reveals that the court reviewed the parties' prior merger arguments from the first resentencing and the briefs filed from the appeal of that prior resentencing judgment. Because the state made the same argument in its brief related to the appeal of the prior resentencing judgment that was raised and rejected in *Nelson*—that defendant's commission of first-degree sexual abuse involving different body parts did not constitute "the same conduct" within the meaning of ORS 161.067(3)—it appears that reasoning formed the legal basis underlying the court's ruling. *See Nelson*, 282 Or App at 433-42.

a defendant the opportunity to renounce his or her criminal intent." *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010). Before separate convictions can be imposed, "one crime must end before another begins." *Id.* at 185 (quoting *State v. Barnum*, 333 Or 297, 303, 39 P3d 178 (2002), *overruled on other grounds by State v. White*, 341 Or 624, 147 P3d 313 (2006)). "Thus, to support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." *State v. West-Howell*, 282 Or App 393, 397-98, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) (emphasis in original).

We agree with defendant that the evidence is insufficient to support a finding that there was a sufficient pause between his commission of the two sexual abuse acts to support entry of separate convictions. Z testified that the entire sexual episode occurred over a short period of time on the floor of the garage, that defendant showed her how to hold his penis and then instructed her to put her mouth on it, and then touched her vagina. Z testified that the incident was interrupted when her sister knocked on the door after the final act of sexual abuse occurred. Thus, no reasonable factfinder could conclude that there was any temporal break or pause in defendant's aggression between the two acts of sexual abuse such that one crime ended before another began. *See State v. Glazier*, 253 Or App 109, 118, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013) (concluding that the trial court erred in failing to merge the verdicts where "there was no evidence of a temporal break between defendant's assaultive acts such that a trier of fact could find that one assault had ended before another began"); *Nelson*, 282 Or App at 430-31, 442-47 (looking to cases involving merger of assault verdicts for guidance and concluding that the three sexual abuse counts based on a sequential touching of the victim, which included the defendant touching the victim's breast, forcing her to touch his penis, and touching her vagina, merged into a single conviction of first-degree sexual abuse under ORS 161.067(3) where "the entire violent episode *** occurred in the confined space of the bathroom,

without interruption by any significant event, and without a pause in the defendant's aggression") (citation and internal quotation marks omitted)); *State v. Dugan*, 282 Or App 768, 773, 387 P3d 439 (2016) (concluding that two counts of sexual abuse in the first degree based on the touching of two different body parts merged because the "record demonstrates only that defendant's acts occurred in sequence over a brief period of time, between 10 and 15 minutes, in a confined space, the victim's entryway, without interruption by any significant event, and without a pause in defendant's aggression" (internal quotation marks omitted)).

The state does not argue that either the location or duration of the incident justifies entry of separate convictions. Rather, the state argues only that something of significance occurred between the two acts of sexual abuse, interrupting defendant's conduct and creating a pause sufficient for him to renounce his criminal intent. *See State v. King*, 261 Or App 650, 656, 322 P3d 597 (2014) (concluding that "something of significance" occurred between the first and second assaults preventing merger where the victim had subdued the defendant, but the defendant "re-entered the fray, hitting the victim" again after the defendant's friend "freed defendant from the victim's grasp"). Specifically, the state argues that, between defendant's commission of the first act of sexual abuse (causing victim to touch his penis) and the second act of sexual abuse (touching of victim's vagina), defendant instructed Z to put her mouth on his penis. Therefore, according to the state, defendant had stopped committing the first act of sex abuse, "formed the intent to commit the distinct, more serious criminal act of sodomy," and then ceased committing the sodomy to commit a different act of sexual abuse.

We disagree with the state that the intervening sodomy, on the facts of this case, was a significant intervening event creating a pause sufficient to allow defendant the opportunity to renounce his criminal intent. Although the state argues that at the time defendant caused the sodomy, "the first act of sexual abuse *** had stopped," the record does not support such a finding. Here, Z testified that defendant showed her how to "grab[ ]" his penis with her hand and then told her to put her mouth on it. There was no evidence

of a break between the sexual contact underlying the sexual abuse and the initiation of the sodomy. On the contrary, the evidence showed that the first act of sexual contact that initiated the abuse—defendant causing the victim to touch his penis—assisted defendant in the commission of the sodomy. Indeed, the court found that "it was clear that there was progression being used by the defendant to get the defendant to ultimately perform the sodomy." *See Ball v. Gladden*, 250 Or 485, 487, 443, P2d 621 (1968) ("What actually transpired is a question of fact for the trial court or jury."); *Reed*, 256 Or App at 63 ("We are bound by the findings of the trier of fact, provided that the findings are supported by constitutionally sufficient evidence."). In other words, the sexual abuse was sufficiently intertwined with defendant's commission of the sodomy such that, once defendant initiated the sodomy, the sexual abuse was still ongoing.

We acknowledge that, when evaluating the relationship between defendant's commission of the sodomy and the second act of sexual contact—defendant's touching of the victim's vagina—the sufficiency of the pause issue is a closer question. However, we nonetheless conclude that the state failed to adduce sufficient evidence to establish any temporal break or other significant event between defendant's commission of the sodomy and the final act of sexual touching to allow a trier of fact to conclude that there was a sufficient pause between the two sexual abuse counts. *See Nelson*, 282 Or App at 443 ("[T]he state, as the party asserting that defendant's conduct *** is 'separately punishable' for purposes of ORS 161.067(3), bears the burden of adducing legally sufficient evidence of the requisite sufficient pause." (Internal quotation marks and citation omitted.)). Z testified that, while she and defendant were still sitting on the floor in the same location as where the first act of sexual abuse and sodomy took place, the victim's pants were partially pulled down and defendant touched her vagina. Z also testified that the entire episode of abuse was short and did not last long. The state failed to present any evidence that defendant had paused between his first act of sexual abuse or the sodomy and when defendant initiated the second sexual contact by touching the victim's vagina. On this record, a trier of fact could only speculate that those crimes had

ceased, or that there was some other significant event that occurred, at the time defendant initiated the final act of sexual contact to allow defendant the opportunity to renounce his criminal intent. *See Nelson*, 282 Or App at 447 (concluding merger is required where there "is nothing in the record that would allow a nonspeculative inference that each crime was separated from the others by a sufficient pause in defendant's conduct to afford him an opportunity to renounce his criminal intent"); *West-Howell*, 282 Or App at 397-98 (stating that "to support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins"). As in *Nelson*, "[t]his is a case where the record demonstrates only that defendant's acts occurred in sequence over a brief period of time." *Nelson*, 282 Or App at 447. Although we might reach another conclusion on a different record, the state failed to meet its burden in this case to establish that defendant's instruction to the victim to sodomize him was a significant intervening event between either the first or second acts of sexual abuse that created a pause sufficient to allow defendant an opportunity renounce his intent between the two acts of sexual abuse.

     The state argues that our decision in *West-Howell* compels a different conclusion. *West-Howell* addressed, for the first time, "the sufficiency of a pause between sexual crimes, during which the defendant engages in other criminal conduct." 282 Or App at 399. The defendant was convicted of, among other crimes, two counts of first-degree sodomy. In between the commission of the two sodomies, the defendant strangled and attempted to rape the victim. We summarized the evidence as establishing that

> "the first act of sodomy took place on the floor and lasted for five to 10 minutes. At the conclusion of that act, defendant moved the victim onto the bed, strangled her until she lost consciousness and, after she came to, attempted to rape her. The defendant then moved the victim back onto the floor before sodomizing her again."

*Id.* at 401.

     We first rejected the defendant's argument that, "because there was no cessation in defendant's *overall criminal conduct*, the pause between the two acts of sodomy was

insufficient in scope or quality to afford defendant the opportunity to renounce his criminal intent." *Id.* at 400 (emphasis in original). The operative question, we explained, "is whether the pause between the two acts of sodomy was sufficient to allow defendant to renounce his intent to commit sodomy," not "whether there existed a pause sufficient to renounce *any* criminal intent." *Id.* at 400-01 (emphasis in original). Thus, because the defendant's acts of sodomy were separated by "assaultive conduct" of a "qualitatively different nature," those acts did not "render his conduct 'continuous and uninterrupted' so as to require merger." *Id*. And, because the defendant "could have * * * been satisfied with physical violence" but the defendant "[i]nstead * * * formed the intent to sodomize [the victim] again," the court held that there was a sufficient pause supporting entry of multiple sodomy convictions. *Id.* at 401.

Here, the state relies on *West-Howell* to support its argument that the intervening sodomy in this case was "qualitatively" different from the sexual abuse. According to the state, because first-degree sodomy is a more serious offense than first-degree sexual abuse, defendant escalated his conduct by making the victim perform oral sex, which was "qualitatively different [conduct] from what came before." Thus, the state contends, defendant had an opportunity to renounce his criminal intent at the time he began the sodomy.

*West-Howell* is distinguishable and does not speak to the precise issue in this case. The intervening conduct between the two separate sodomy convictions in *West-Howell* included strangulation of a nonsexual nature that caused the victim to lose consciousness, an attempted rape that the victim fought off before the second sodomy began, and movement of the victim from the floor to the bed. For purposes of merger, the question is whether the pause in defendant's criminal conduct was "*so marked in scope or quality* that it affords a defendant the opportunity to renounce his or her criminal intent." *Huffman*, 234 Or App at 184 (emphasis added). Where, as here, the entire episode involved a series of continuous sexual offenses without any break in between each offense, and one offense—defendant instructing Z to touch his penis—was used to initiate the

next offense—defendant telling Z to put her mouth on his penis—the transition between those sexual offenses was not so marked in scope or quality to create a pause sufficient to allow defendant an opportunity to renounce his criminal intent. Unlike *West-Howell*, there was no temporal break, pause in defendant's commission of the sexual abuse, or other significant event in defendant's sexual aggression sufficient to create a pause that would have allowed defendant the opportunity to make a new, independent decision whether to commit a new act of sexual abuse. Thus, *West-Howell* is not controlling.

We do not hold that simply because the intervening conduct in this case falls within the same broad category of the crimes sought to be merged (*e.g.*, "sexual conduct"), those crimes must merge under ORS 161.067(3). Rather, we conclude that when, as here, the intervening conduct was intertwined with the conduct underlying the crimes sought to be merged and assisted defendant in achieving his overall criminal objective of sexually abusing the victim, that the intervening conduct was of a similar nature is relevant to the sufficiency of the pause issue and, thus—with no other evidence that one crime ended before the other began—merger is precluded. Even assuming the sodomy was of a more serious nature than the sexual abuse, that fact alone does not, as a matter of law, create a pause sufficient for defendant to have renounced his criminal intent within the meaning of ORS 161.067(3). Thus, the trial court erred in failing to merge defendant's sexual abuse guilty verdicts.[6]

Convictions on Counts 12 and 13 reversed and remanded for entry of a judgment of conviction for one count of first-degree sexual abuse; remanded for resentencing; otherwise affirmed.

---

[6] Our conclusion obviates the need to address defendant's third assignment of error related to the imposition of consecutive sentences on Counts 12 and 13.