Submitted October 20, 2020; convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of first-degree rape, remanded for resentencing, otherwise affirmed April 20; petition for review denied October 6, 2022 (370 Or 303)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JIHAD ELDEEN MOORE,
aka Jihad Eldeen Moore, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR13996; A169841

510 P3d 907

Defendant appeals from a judgment of conviction for two counts of first-degree rape and one count of first-degree sodomy. He assigns error to (1) the trial court's denial of a motion to dismiss because the statute of limitations for his offenses had expired, (2) the trial court's denial of a motion to suppress inculpatory statements to police because they were involuntary, and (3) the trial court's failure to merge the verdicts on the two counts of first-degree rape into a single conviction because there was no "sufficient pause" in criminal conduct as required by ORS 161.067(3). The state argues that the two counts of first-degree rape should not merge because they are "qualitatively different," and one was charged as "forcible compulsion" and the other as "physical helplessness." *Held*: The Court of Appeals rejected defendant's first assignment of error because the statute of limitations was lawfully extended and applied retroactively to his offenses. It rejected the second assignment of error without further discussion. For the convictions of two counts of first-degree rape, the trial court erred by failing to merge the two counts because there was not a sufficient pause as defined by ORS 161.067(3) and *State v. Bradley*, 307 Or App 374, 477 P3d 409 (2020), *modified on recons*, 309 Or App 598, 477 P3d 409 (2021).

Convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of first-degree rape; remanded for resentencing; otherwise affirmed.

Thomas M. Ryan, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of first-degree rape; remanded for resentencing; otherwise affirmed.

**JAMES, P. J.**

Defendant appeals from a judgment of conviction for two counts of first-degree rape (Counts 1 and 2), ORS 163.375, and one count of first-degree sodomy (Count 3), ORS 163.405, raising three assignments of error. We reject his second assignment without discussion and write only to address the first and third. In the first, defendant claims that the trial court erred by denying a motion to dismiss because the statute of limitations for his offenses had already expired. In the third, defendant argues that the trial court erred when it failed to merge the verdicts on the two counts of first-degree rape into a single conviction because there was no "sufficient pause" in criminal conduct as required by ORS 161.067(3). For the reasons explained below, we reject defendant's argument regarding the statute of limitations, but we agree with defendant regarding merger. We therefore reverse and remand the convictions on Counts 1 and 2 for entry of a single conviction, and otherwise affirm.

In November 2017, Portland police detectives identified defendant as a suspect in a 1996 sexual assault by testing the "rape kit" that was collected when the victim went to the emergency room after the attack. Defendant's DNA profile matched the DNA profile found in the collected evidence, and based on that evidence, the state charged defendant. At trial, the victim testified that in 1996 defendant had invited her to share drugs with him. He took her to a secluded place, but then strangled her to the point where she lost consciousness. When she awoke, defendant was raping her. After the victim regained consciousness, defendant forced her to perform oral sex. He also threatened her with a firearm and robbed her. After the attack, the victim sought medical help and contacted police, who initiated the investigation that ultimately led to the arrest of defendant decades later.

Defendant's first assignment of error concerns the statute of limitations. There are three limitations periods at issue because of the gap between the assault in 1996 and the testing of the rape kit in 2017. At the time of the charged incident in 1996, the applicable limitations period was six years. ORS 131.125 (1995). In 2001, before the six-year limitations

period had run, the legislature enacted a 12-year limitations period, provided that the defendant was identified on the basis of a DNA sample comparison, but the legislature did not expressly address the issue of retroactivity. Or Laws 2001, ch 375, § 1. Then, in 2007, the legislature enacted a 25-year limitations period and explicitly made it retroactive to apply to crimes committed before its effective date, if the prior limitations period had not expired. Or Laws 2007, ch 840, §§ 1-2.

Defendant argues on appeal, as he did at trial, that because the legislature did not expressly make the 2001 amendment to the limitations period retroactive, the limitations period for the 1996 assault expired six years after the date of the offenses and could not later be revived by operation of the 2007 amendments—which extended the statute of limitations to 25 years—without violating the constitutional prohibition against *ex post facto* laws. As defendant argues, "[w]hen the legislature wants to make a statute of limitations extension apply retroactively, it has said so explicitly." Defendant contrasts the 2007 amendments, Or Laws 2007, ch 840, § 2, which increased the limitations period to 25 years and included a retroactivity clause, with the legislative silence in the 2001 amendment.

The state responds that when the legislature extended the statute of limitations period in 2001 from six to 12 years for the crimes of rape and first- or second-degree sodomy, it intended for the change to apply retroactively to pertinent offenses that were still within the six-year limitations period. Under the statutory interpretation framework set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), the state argues that the statute's text in context and legislative history show that the legislature extended the limitations period to address the problem of unresolved sexual assault cases that had DNA evidence that were running up against the original six-year limitations period. Furthermore, the state argues that there is no prohibition on retroactivity set out in the plain language of the amended statute's text, Or Laws 2001, ch 375, § 1. The state argues that, under our case law, "[i]n both civil and criminal contexts, enlarged Statutes of Limitations have applied retroactively, but only for claims that were not yet barred by the

previous limitation." *Ritcherson v. State of Oregon*, 131 Or App 183, 187, 884 P2d 554 (1994), *rev den*, 320 Or 507 (1995) (citing *Nichols v. Wilbur*, 256 Or 418, 419-20, 473 P2d 1022 (1970); *State v. Dufort*, 111 Or App 515, 519, 827 P2d 192 (1992)).

We review a trial court's interpretation of a statute as a question of law. *Gaines*, 346 Or at 171-72; *Rhodes v. Eckelman*, 302 Or 245, 248, 728 P2d 527 (1986) ("In determining the effect to be given to a statute—whether denominated 'prospective,' 'retroactive' or something else—the function of the court is to 'discern and declare' the intent of the legislature."). Our interpretation of a statute is governed by the three-part test set out in *Gaines*, 346 Or at 171-72. The first and most important step is an examination of the text and context. That is followed by a consideration of the legislative history if it is useful for our analysis, and we must determine its "evaluative weight." *Id.* If the legislature's intent remains unclear after examining text, context, and legislative history, we may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty. *Id.* at 172.

We begin with the statute at issue, which is the 2001 amendment to ORS 131.125 set out in Oregon Laws 2001, chapter 375, section 1:

> "(8)  Notwithstanding subsection (2) of this section, a prosecution for rape in the first or second degree or sodomy in the first or second degree may be commenced within 12 years after the commission of the crime if the defendant is identified after the period described in subsection (2) of this section on the basis of DNA (deoxyribonucleic acid) sample comparisons."

Except for the provision in subsection (8) to extend the limitations period to 12 years if the defendant is identified on the basis of DNA, the legislature maintained the six-year limitations period set out in subsection (2).

The text of ORS 131.125(8) (2001) as amended does not explicitly address whether the new limitations period applies retroactively. However, the language of the statute does not preclude its retroactive application. Indeed, subsection (8) specifies that "a prosecution * * * may be commenced

within 12 years after the commission of the crime if the defendant is identified after the period described in subsection (2)." Therefore, nothing in the plain language of the statute contradicts the extension of the limitations period for the listed offenses if the original six-year limitations period has not already run. Indeed, the statute's text denotes that in the particular circumstance that a defendant is identified by DNA analysis, the limitations period set out in subsection (2) is extended to 12 years. However, the plain language of the statute does not resolve whether it extends an existing period of limitations that has not yet run.

As we have noted, "[i]n both civil and criminal contexts, enlarged Statutes of Limitations have been applied retroactively, but only for claims that were not yet barred by the previous limitation." *Ritcherson*, 131 Or App at 187 (citations omitted). In *Dufort*, we held that the extension of the limitations period for the criminal statute at issue did not violate the *ex post facto* provisions in either the state or federal constitutions because "[a]n extension of a limitation does not punish acts that were legal at the time they occurred or impose a greater punishment." 111 Or App at 520. Furthermore, we concluded that, even though the legislature had not expressly made the increased limitations period retroactive, it was "consistent with the purpose of [the] legislative change" to conclude that the amended limitations period "applie[d] to incidents of sexual abuse that had not yet been barred under the previous statute." *Id.* at 519.

We reach a similar conclusion in this case in light of the legislative history of the 2001 amendment. The amendment to ORS 131.125 originated in the House of Representatives as House Bill (HB) 2663 (2001). The committee discussed the retroactive application of the limitations period at a public hearing on the bill. Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 2663, Mar 27, 2001 (testimony of Dale Penn of the Oregon District Attorneys Association). When asked by legislative counsel about the prospective or retroactive application of the limitations period, Penn responded that it would not apply to a limitations period that had already run, and he pointed to case law on the topic, stating, "A statutory

change would only extend those cases where the statute has not run." Penn further remarked that the existing DNA database was getting close to six years old and that was the importance of passing the legislation to extend the limitations period so that the collected samples would remain viable for criminal prosecution.

Moreover, Tom Dixon, the director of the state's forensic services division, testified in support of the bill; he explained that hundreds of unsolved rapes occurred each year and that there were over 5,000 unsolved rapes that had been committed in Oregon in the past six years. Dixon remarked that the statute of limitations was about to run before the offenders could be found, and he cited examples of sexual assaults from 1996 and 1997 that had recently been solved because of developments in DNA technology. Representative Lowe expressed concern about proving the chain of custody for DNA evidence if the limitations period were to be increased to 20 years. The bill that passed reduced the proposed 20-year limitations period to a 12-year period.

Considering that clear legislative history, we conclude that the amendments were intended to extend the limitations period in the case of incidents of sexual abuse that had not yet been barred under the previous statute. The legislature sought to maintain the viability of DNA evidence for criminal prosecutions where the existing six-year limitations period would preclude the use of inculpatory evidence that was languishing in the state's custody. The amendments to ORS 131.125(8) occurred against the backdrop of recent advances in DNA technology that were critically important for testing evidence in unsolved rape investigations that were running up against the original limitations period. The legislature intended to remedy the problem by extending the limitations period and making that extension applicable to offenses for which that limitations period had not yet expired.

The parties agree that if the limitations period was lawfully extended by the 2001 amendment, the 2007 amendment that extended the limitations period to 25-years would apply to defendant, thus making that 25-year period the applicable limitations period. Given that defendant was

prosecuted well within that limitations period, we reject his statute-of-limitations argument.

In defendant's third assignment of error, he claims that the trial court erred by failing to merge the guilty verdicts on two counts of first-degree rape, Counts 1 and 2, into a single conviction, arguing that they are based on the same conduct and charged under the same statutory provision. Defendant contends that there was not a "sufficient pause," ORS 161.067(3), interrupting his criminal conduct that would allow the court to sentence him for two separate counts of first-degree rape. We agree with defendant that the state failed to establish a "sufficient pause," as defined by ORS 161.067(3), and we reverse and remand for merger and resentencing.

At trial, the victim testified about the circumstances of the assault:

"[WITNESS:]   We were sitting side by side.

"[PROSECUTOR:]   And what happened next?

"[WITNESS:]   I looked over at him and he looked at me and he grabbed me around the throat and started strangling me. And I tried to run and then I went and passed out.

"[PROSECUTOR:]   Do you remember how long you were passed out for?

"[WITNESS:]   I don't know.

"[PROSECUTOR:]   What's the next memory that you have?

"[WITNESS:]   I just remember hearing dripping and feeling dripping and—what is that? And I realized that it was blood coming out of my nose. And then I realized that he was behind me, having sex with me. And so I tried to get into a runner's position so that I could run away. And, at that point, he realized that I was awake and so he flipped me over and made me give him oral sex. And then he was done and some point—I don't know if it was when he was— when I was giving him oral sex, if he told me he had a gun or if it was when he was taking my jewelry, my watch and my rings, then he told me he had a gun and so then he robbed me."

In addition to the victim's testimony, the state offered defendant's statements made under interrogation in the form of both a redacted transcript and the complete audio and video recordings. After initially denying that he had had sex with the victim, defendant later claimed that the sex was consensual. Detectives questioned him further, and he admitted that "I did something against someone's will." Defendant recounted that "[s]he said no" and "I continued anyway."

At sentencing, the prosecutor argued that, "[a]s the facts came out at trial, the defendant began raping the victim while she was physically helpless because he had rendered her unconscious by choking her. And then [upon the victim regaining consciousness he] continued holding her down as she tried to get away." In response, the trial court determined that, "[w]ith respect to the request to merge Counts 1 and 2, that request is denied. There was sufficient pause to reflect and consider. The defendant continued to engage in the rape following those pauses or—and over—across that period of time."

On appeal, the state concedes that this is a "close case" but maintains that the record supported the trial court's factual determination that there was a "sufficient pause" providing defendant time to renounce his criminal intent. The state asserts, "Collectively, the evidence supports a finding that defendant thus committed two qualitatively different rapes: the first was the rape of a victim who [was] incapacitated: when defendant strangled the victim and penetrated her while she was unconscious. Then, immediately after the victim regained consciousness, a second qualitatively different rape occurred—a violent rape committed through forcible compulsion." The state continues, "The awakening of [the] victim in this case was a transformative intervening event *** [that] afforded defendant an opportunity to stop and renounce his intent."

We review the trial court's ruling on whether to merge the guilty verdicts for legal error and are bound by the trial court's factual findings if there is constitutionally sufficient evidence in the record to support them. *State v. Bradley*, 307 Or App 374, 379, 477 P3d 409

(2020), *modified on recons*, 309 Or App 598, 477 P3d 409 (2021).

ORS 161.067(3), the so-called "antimerger" statute, provides:

> "When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent. Each method of engaging in oral or anal sexual intercourse as defined in ORS 163.305, and each method of engaging in unlawful sexual penetration as defined in ORS 163.408 and 163.411 shall constitute separate violations of their respective statutory provisions for purposes of determining the number of statutory violations."

As we explained in *Bradley*, under ORS 161.067(3) a court can enter multiple convictions for criminal conduct involving the same conduct or criminal episode, same victim, and same statutory provision only if the violations are separated from one another by a "sufficient pause" in the defendant's criminal conduct. 307 Or App at 380. A "sufficient pause" occurs when "there is 'a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords defendant the opportunity to renounce his or her criminal intent.'" *Id.* at 380-81 (quoting *State v. Huffman*, 234 Or App 177, 184, 227 P3d 1206 (2010)); *State v. West-Howell*, 282 Or App 393, 397-98, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) ("[T]o support the entry of multiple convictions for the same offense under ORS 161.067(3), one crime must end before another begins *and* each crime must be separated from the others by a sufficient pause in the defendant's criminal conduct to afford him an opportunity to renounce his criminal intent." (Emphasis in original.)).

In *Bradley*, the defendant contested entry of two separate sexual abuse convictions based on a sexual episode that

occurred over a short period of time on the floor of a garage. The defendant showed the victim how to hold his penis and then instructed the victim to put her mouth on it, and then the defendant touched her vagina. The victim testified that the incident was interrupted when her sister knocked on the door after the final act of sexual abuse occurred. 307 Or App at 381. We concluded that no reasonable factfinder could have concluded that there was any temporal break or pause in the defendant's aggression between the two acts of sexual abuse "such that one crime ended before another began." *Id.* Critically, "[t]here was no evidence of a break between the sexual contact underlying the sexual abuse and the initiation of the sodomy." *Id.* at 382-83. Thus, for the purposes of merger, the question is "whether the pause in defendant's criminal conduct was '*so marked in scope or quality* that it affords a defendant the opportunity to renounce his or her criminal intent.'" *Id.* at 385 (quoting *Huffman*, 234 Or App at 184 (emphasis added)). Said differently, when the intervening conduct is "*intertwined* with the conduct underlying the crimes sought to be merged and assisted defendant in achieving his overall criminal objective of sexually abusing the victim, that the intervening conduct was of a similar nature is relevant to the sufficiency of the pause issue * * *." *Bradley*, 307 Or App at 386 (emphasis added).

Here, the victim testified that defendant began raping her while she was unconscious after he grabbed her throat and she passed out before she could run away. When she awoke, he was engaged in the ongoing sexual assault, and that assault continued. The state contends that defendant committed two "qualitatively different rapes": the first rape was when defendant strangled the victim and started raping her while she was unconscious, and the second rape occurred when defendant continued the assault through forcible compulsion after she awoke. Although the state concedes that the rapes occurred "in succession," it argues that the qualitatively different nature of them precludes merger because "[t]he awakening of [the] victim in this case was a transformative intervening event which stopped the initial rape * * *."

We are not persuaded that this record contains sufficient evidence that the victim's coming to consciousness

provided a "sufficient pause" for defendant to renounce his criminal intent for purposes of the anti-merger statute. Under that statute, it is the state's burden, "as the party asserting that [the] defendant's conduct *** is 'separately punishable' for purposes of ORS 161.067(3)," to adduce legally sufficient evidence of the requisite sufficient pause. *State v. Nelson*, 282 Or App 427, 443, 386 P3d 73 (2016). As the state concedes, the conduct that constituted the rape was ongoing at the time defendant strangled the victim and after she returned to a conscious state. In other words, the assaultive conduct before and after the victim awoke was intertwined with the conduct underlying the two counts of rape. Furthermore, there was no evidence of any temporal break—no "sufficient pause"—between the successive acts to suggest that one rape ended before the other began. *See State v. Campbell*, 265 Or App 132, 139, 333 P3d 1220 (2014) (concluding that the "continuous and uninterrupted attack of a victim" required merger of multiple counts of assault for shooting the victim several times with a BB gun).

The state turns to our decision in *West-Howell* for authority that there was a sufficient pause in the instant case. There, we affirmed the trial court's refusal to merge guilty verdicts on two counts of first-degree sodomy based on a "sufficient pause" that occurred in the defendant's conduct. The defendant had forced the victim to perform oral sex on him for five to 10 minutes, moved her to a bed, and then strangled her to the point where she lost consciousness. *Id.* at 395-96. When the victim regained consciousness, the defendant attempted, unsuccessfully, to rape her. She fought off the defendant, and then the defendant once again forced her to perform oral sex on him. The different acts of sodomy, we explained, were separated by "assaultive conduct of a different nature." *Id.* at 400. We concluded that "[t]he issue is not *** whether there existed a pause sufficient to renounce *any* criminal intent. Rather, the operative question is whether the pause between the two acts of sodomy was sufficient to allow defendant to renounce his intent to commit sodomy[.]" *Id.* at 400-01 (emphasis in original).

The state theorizes that because defendant was convicted of one count of first-degree rape based on "forcible compulsion" and the second count of rape based on "physical

helplessness," the "qualitatively different" nature of the rapes precludes merger, which the state argues is analogous to the differences separating the counts of sodomy in *West-Howell* for discerning a sufficient pause in which defendant could renounce his criminal intent. We disagree. Oregon case law makes clear that the different elements of first-degree rape such as "forcible compulsion" or "physical helplessness" do not constitute different crimes, because they are part of the same statutory section. *State v. Parkins*, 346 Or 333, 347-55, 211 P3d 262 (2009) (detailing the analysis to determine the legislature's intent for creating a single crime); *Bumgarner v. Nooth*, 254 Or App 86, 94, 295 P3d 52 (2012) (concluding that two first-degree rape convictions that arose out of the same conduct but were based on charging different elements under the rape statute should have merged). Moreover, the sequence of the assault in *West-Howell* is readily distinguishable: That case involved two counts of sodomy separated by a series of other acts and movements, including the defendant moving the victim to a bed, strangling her to the point of unconsciousness, attempting to rape her on the bed after she regained consciousness, and then moving her back to the floor to perform oral sex. 282 Or App at 395-96. This case involves the ongoing rape of a victim who was in and out of consciousness during the same attack in the same location.

We conclude that the state failed to present sufficient evidence that defendant's counts of raping the victim were based on acts separated by a "sufficient pause." Accordingly, the trial court erred when it failed to merge the guilty verdicts on those two counts of first-degree rape.

Convictions on Counts 1 and 2 reversed and remanded for entry of judgment of conviction for one count of first-degree rape; remanded for resentencing; otherwise affirmed.